GEORGE CONROY ET AL., APPELLEES, V. FLORENTIUS M. HALLOWELL, APPELLANT.

FILED DECEMBER 24, 1913. No. 18,176.

County Judges: REMOVAL FROM OFFICE. The only method of removing a county judge from office in this state is by impeachment, as provided in section 14, art. III of the constitution.

APPEAL from the district court for Buffalo county: JAMES R. HANNA, JUDGE. *Reversed and dismissed.*

*H. M. Sinclair, W. D. Oldham, Thomas F. Hamer* and *John A. Miller,* for appellant.

*Edward B. McDermott, Charles G. Ryan* and *Ralph R. Horth,* contra.

FAWCETT, J.

From a judgment of the district court for Buffalo county, removing appellant, who will be referred to as defendant, from the office of county judge of that county, he prosecutes this appeal.

The action was instituted by appellees, who will be designated as plaintiffs, to remove defendant from his office for causes enumerated in section 1, art. II, ch. 18, Comp. St. 1911. The district court, by consent of parties, referred the case to Honorable T. O. C. Harrison to take testimony and report findings of fact and conclusions of law. The findings of fact and conclusions of law by the referee were adverse to defendant. No proper bill of exceptions of the evidence taken before the referee has been preserved in the record. The case must therefore be determined purely upon the questions of law raised by the motion for a new trial and assigned here, one of which is that the district court is without jurisdiction to remove a county judge; in other words, that the statute, under which the complaint was filed and prosecuted, in so far as it permitted the removal of a county judge for any

other offenses than those enumerated in the constitution, and in any other manner than by impeachment as provided in the constitution, is void.

Section 1 of the act referred to provided: "All county officers, including justices of the peace, may be charged, tried, and removed from office for official misdemeanors in the manner and for the causes following: *First*. For habitual or wilful neglect of duty. *Second*. For gross partiality. *Third*. For oppression. *Fourth*. For extortion. *Fifth*. For corruption. *Sixth*. For wilful maladministration in office. *Seventh*. For conviction of a felony. *Eighth*. For habitual drunkenness." Section 2 provided: "Any person may make such charge, and the district court shall have exclusive original jurisdiction thereof by summons." Section 3 provided that the proceedings should be as nearly like those in other actions as the nature of the case would admit of. Section 4 provided that the complaint should be by "an accuser against the accused," and should contain the charges with the necessary specifications, and be verified by the affidavit of any elector of the state. Section 5 provided that it would be sufficient that the summons require the accused to appear and answer a complaint for "official misdemeanor;" and that a copy of the complaint must be served with the summons. Section 6 provided that no answer or other pleading after the complaint is necessary, but that the defendant might move to reject the complaint or demur thereto upon any ground rendering such motion or demurrer proper. Section 7 provided that the questions of fact should be tried as any other action, and if the accused should be found guilty judgment should be entered removing him from his office and declaring the office vacant. This act was adopted in 1866. Turning to the constitution of 1866, we find the following provisions:

Section 28, art. II, provided: "The house of representatives shall have the sole power of impeachment, but a majority of the members elected must concur therein. Impeachments shall be tried by the senate; and the senators,

when sitting for that purpose, shall be upon oath or affirmation to do justice according to law and evidence. No person shall be convicted without the concurrence of two-thirds of the senators."

Section 29 provided: "The governor, secretary of state, auditor, treasurer, and judges of the supreme and district courts, shall be liable to impeachment for any misdemeanor in office; but judgment in such cases shall extend only to removal from office, and disqualification to hold any office of honor, trust or profit, under this state; but the party convicted or acquitted shall nevertheless be liable to indictment, trial and punishment, according to law. All other civil officers shall be tried for misdemeanors in office in such manner as the legislature may provide."

Section 31 provided: "The legislature may declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy where no provision is made for that purpose in this constitution."

In *Brittle v. People*, 2 Neb. 198, 211, Mr. Justice CROUNSE gives us a little inside information as to the birth of this constitution: "As is well known, the constitution was originally drafted in a lawyer's office by a few self-appointed individuals. These importuned the legislature then sitting to submit it to a vote of the people." On page 214, in speaking of the matter again, the learned justice said: "Yet we have seen that it was born in a law office, instead of a convention; that it was made by no one under any authority whatever; and that it might as well have been made by any one else as by those who did draft it. Again, we have noted that it was submitted by nobody lawfully empowered to do so; that no one was obliged to vote, and no one could be punished for voting a thousand ballots at the pretended election. And we have further seen that, whether carried by a majority vote in fact or not, we are nevertheless a state working under the constitution so voted for." It is not surprising that the people were not satisfied with a constitution drafted, submitted, and voted for under the conditions above outlined,

and in the short period of six years thereafter they procured the adoption of a new constitution, prepared by a constitutional convention composed of many of the best men in the state, a few of whom are still living and reflecting honor upon our commonwealth, notably our present Chief Justice M. B. REESE; the president of that convention, Honorable John Lee Webster; United States District Judge William H. Munger, and Governor O. A. Abbott. As a result of the careful and extended deliberations of this convention, the constitution of 1875 was drafted, submitted to a vote of the people, and duly adopted.

It will be conceded on all sides that there was no conflict betwen the statute set out and the quoted provisions of the constitution of 1866; and the important question involved is what change, if any, was made by the constitution of 1875? To that point we now direct our attention. Further reference to sections of the constitution will be to the constitution of 1875.

Section 18, art. XVI, provides: "If this constitution be adopted the existing constitution shall cease in all its provisions on the first day of November, A. D. 1875." In *Wheeler v. City of Plattsmouth,* 7 Neb. 270, in considering that section, we held: "The old constitution did, then, *cease in all its provisions,* and must be considered, except as to transactions past and closed, as if it never existed."

Section 1, art. VI, provides: "The judicial power of this state shall be vested in a supreme court, district courts, county courts, justices of the peace, police magistrates, and in such other courts inferior to the district courts as may be created by law for cities and incorporated towns."

Section 4, art. X, provides: "The legislature shall provide by law for the election of such county and township officers as may be necessary."

Section 13, art. XVI, provides: "The general election of this state shall be held on the Tuesday succeeding the first Monday of November of each year, except the first general election, which shall be on the second Tuesday in October, 1875. All state, district, county, precinct and

township officers, by the constitution or laws made elective by the people, except school district officers, and municipal officers in cities, villages and towns, shall be elected at a general election to be held as aforesaid. Judges of the supreme, district and county courts, all elective county and precinct officers, and all other elective officers, the time for the election of whom is not herein otherwise provided for, and which are not included in the above exception, shall be elected at the first general election, and thereafter at the general election next preceding the time of the termination of their respective terms of office."

Section 14 provides: "The terms of office of all state and county officers, of judges of the supreme, district and county courts, and regents of the university shall begin on the first Thursday after the first Tuesday in January next succeeding their election."

Section 15 provides: "The supreme, district and county courts established by this constitution shall be the successors respectively of the supreme court, the district courts and the probate court, having jurisdiction under the existing constitution."

Section 16 provides: "The supreme, district, and probate courts now in existence shall continue, and the judges thereof shall exercise the power and retain their present jurisdiction until the courts provided for by this constitution shall be organized."

Section 20, art. III, provides: "All offices created by this constitution shall become vacant by the death of the incumbent, by removal from the state, resignation, conviction of a felony, impeachment, or becoming of unsound mind. And the legislature shall provide by general law for the filling of such vacancy, when no provision is made for that purpose in this constitution."

Section 14, art. III, provides: "The senate and house of representatives in joint convention shall have the sole power of impeachment, but a majority of the members elected must concur therein. Upon the entertainment of

a resolution to impeach by either house, the other house shall at once be notified thereof, and the two houses shall meet in joint convention for the purpose of acting upon such resolution within three days of such notification. A notice of an impeachment of any officer, other than a justice of the supreme court, shall be forthwith served upon the chief justice, by the secretary of the senate, who shall thereupon call a session of the supreme court to meet at the capital within ten days after such notice to try the impeachment. A notice of an impeachment of a justice of the supreme court shall be served by the secretary of the senate upon the judge of the judicial district within which the capital is located, and he thereupon shall notify all the judges of the district court in the state to meet with him within thirty days at the capital, to sit as a court to try such impeachment, which court shall organize by electing one of its number to preside. No person shall be convicted without the concurrence of two-thirds of the members of the court of impeachment, but judgment in cases of impeachment shall not extend further than removal from office and disqualification to hold and enjoy any office of honor, profit, or trust in this state, but the party impeached, whether convicted or acquitted, shall nevertheless be liable to prosecution and punishment according to law. No officer shall exercise his official duties after he shall have been impeached and notified thereof, until he shall have been acquitted."

Section 5, art. V, provides: "All civil officers of this state shall be liable to impeachment for any misdemeanor in office."

An examination of these sections of the constitution shows not only that the office of county judge is a constitutional office, but that the framers of the constitution deliberately segregated that office from other offices elected within a county, and placed county judges in a separate and distinct class with judges of the supreme and district courts, and has, in substantially every instance, classed county courts with the supreme and district courts as a

part of the judicial system of the state; and, while a county judge may be a county officer in the sense that he is an officer elected by the voters of a single county, he is not a county officer as contemplated by the framers of the constitution and within the meaning of that instrument. By section 13, art. XVI, above quoted, this distinction will be seen standing out very clearly. It is there declared: "Judges of the supreme, district and county courts, all elective county and precinct officers, and all other elective officers," etc. Here the county courts are distinctly segregated from "*all* elective *county*" officers. Again, in section 14 it is provided: "The terms of office of *all* state and *county* officers, of judges of the supreme, district and *county* courts," etc., showing, as clearly as language can make it appear, it seems to us, that county courts are in a class with supreme and district courts, and are not to be considered as classed with "county officers."

If we are right in this, then how can such officers be removed? Has the constitution provided for their removal and determined how their offices shall become vacant? The answer must be in the affirmative. The provision of section 29, art. II of the constitution of 1866, *supra,* that the governor, secretary of state, auditor, treasurer, and judges of the supreme and district courts should be liable to impeachment, and that all other civil officers should be tried for misdemeanors in office in such manner as the legislature may provide, is completely superseded by sections 14 and 20, art. III, and section 5, art. V, of our present constitution. It will be seen that section 5, art. V, adds to the causes for impeachment specified in section 20, art. III, the additional cause of "misdemeanor in office." This general term is broad enough to cover any cause set forth in section 1, art. II, ch. 18, *supra,* and it is significant that the framers of the constitution added this general cause, so as to cover every kind and character of maladministration in office, but adhered to the method of removal, viz., by impeachment. Having provided, fully, by section 20, art. III, and section 5, art. V, the grounds

upon which a constitutional office may become vacant, we do not think it is within the power of the legislature to add any other or additional grounds; and, having provided the manner in which the office shall be declared vacant, viz., by impeachment of its incumbent, it is not within the power of the legislature to provide for any other or different method of removal. If this be not so, then the legislature may by statutory enactment provide that the governor, or any other state officer, may be put upon trial upon the accusation of any individual elector, upon some ground other than contemplated by the constitution, and before the district court, and compel him to defend his right to his office upon such complaint, based, it may be, upon prejudice, or prompted by a desire for revenge, instead of giving the official, who has been elected by the people, the right to hold his office until the legislature in joint convention assembled has deliberately decided, by a majority vote of all the members elected, that he should be put upon his trial, and that when so put upon trial it should be in the supreme court. That there are a few cases inferentially holding that way, we concede; but the weight of authority and the better reasoning are to the contrary.

It is claimed that this court has adopted the other view in *State v. Lansing,* 46 Neb. 514, 530. This claim is not well founded. The facts in that case are: In 1891 Lansing was elected county judge of Lancaster county and duly qualified and discharged the duties of his office for the full term. At the general election in 1893 he was re-elected and a certificate of election issued to him, but he did not execute an official bond and file the same in the office of the county clerk within the time required by law. The relator charged that, by reason of his failure to so file his bond, together with his oath of office, the office had become vacant. At the election of 1894, which would be during the middle of that term, the relator was a candidate for election to fill the vacancy. The section of the statute which Judge Lansing failed to comply with provides: "Official

bonds, with the oath indorsed thereon, shall be filed in the proper office within the times as follows: Of all officers elected at any general election on or before the first Thursday after the first Tuesday in January next, succeeding the election." Comp. St. 1891, ch. 10, sec. 5. Section 15 of the chapter provides: "If any person elected or appointed to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant, and such vacancy shall thereupon immediately be filled by election or appointment as the law may direct in other cases of vacancy in the same office." Section 17 provides: "When the incumbent of an office is re-elected or re-appointed he shall qualify by taking the oath and giving the bond as above directed." Judge Lansing failed to file his bond and oath on or before the first Thursday after the first Tuesday in January, 1894, but did file the same on January 25, and the question involved in that case was whether the office thereby became vacant. The district court sustained a general demurrer to the information and entered judgment for the respondent. This court reversed the judgment and remanded the case. The learned commissioner who wrote the opinion, in his customary scholarly manner, considered the questions actually involved in the case before the court, and then on page 530 indulged in the dictum upon which plaintiffs now rely for an affirmance of this case. At the page indicated, section 20, article III of the constitution, is quoted, and the commissioner then says: "It is contended that the expression of these events as creating vacancies is the exclusion of all others, and there are a few decisions in other states lending color to the argument. It would be a sufficient answer to this contention to say that this court has always carried in view the principle that the state constitution is not to be considered as a grant of power, but that its provisions are purely restrictive and that legislation is valid unless prohibited by the state or the federal constitution. Therefore, in such cases

as the present, the maxim *'Expressio unius est exclusio alterius'* is not applicable, and the legislature may adopt any provision not prohibited by the constitution. (Citing cases.) To put it differently, the constitutional provision quoted creates a vacancy upon the happening of any of the events covered by the provision, and the legislature would be prohibited by that provision from enacting any law whereby such an event would not create a vacancy. But it is not prohibited from enacting that vacancies shall be otherwise created." The language of the commissioner immediately following what we have quoted shows that what was above said is pure dictum, viz.: "But aside from this, section 20, article III of the constitution, manifestly refers to events occurring after an induction into office. The case presented is not one of that character. It is not the case of ousting one already legally inducted into office for events occurring after his induction, but, on the contrary, it is questioning the right of one to claim an office in the beginning. The distinction has already been alluded to, but throughout it should be borne in mind that we are here discussing the right of a person to claim a term of office, and not the right of another or of the public to oust one from a term already legally begun." What was said by the learned commissioner in the discussion above set out was in all probability not the result of careful deliberation, nor was it said in a case where the question was involved, and in which he had been favored with the assistance of counsel in argument, as we have been in this case. The reasoning of the commissioner does not apply because, as we have shown, the legislature has not added any additional cause, but all causes specified in the statute under which these proceedings are being prosecuted are covered by section 5, article V of the constitution, above set out. Moreover, if this dictum were permitted to stand as a holding of the court it would not be decisive of the present case, for the reason that it goes no further than to hold that the legislature might add to the causes for removal fixed by the constitution, and does not in any man-

ner attempt to discuss or decide the mode of removal for any added cause. A careful consideration of the dictum quoted satisfies us that it is unsound when attempted to be squared by the several provisions of our constitution above set out.

Plaintiffs also place reliance in *Donahue v. County of Will,* 100 Ill. 94, which, they insist, was approved and followed in *State v. Oleson,* 15 Neb. 247. The office involved in *Donahue v. County of Will* was the office of county treasurer, and that involved in *State v. Oleson* county sheriff. For the reasons which we have set out in this opinion, we think a clear distinction must be drawn between the office of county judge and county offices properly so called. But even as applied to the office of county sheriff, the opinion in *State v. Oleson* was written with grave misgivings as to the soundness of the holding in *Donahue v. County of Will.* The opinion by Mr. Chief Justice COBB, in concluding (p. 250), says: "I think, upon a careful consideration of the whole subject, that it is safe to follow this precedent, though that the case is entirely free from doubt cannot be said." We think *State v. Oleson* is clearly distinguishable from the case at bar.

In *Lowe v. Commonwealth,* 60 Ky. 237, it is held: "Wherever the constitution has created an office and fixed its terms, and has also declared upon what grounds and in what mode an incumbent of such office may be removed before the expiration of his term, it is beyond the power of the legislature to remove such officer or *suspend* him from office for any other reason or in any other *mode* than the constitution itself has furnished." In *Commonwealth v. Williams,* 79 Ky. 42, it is said: "Mr. Cooley says 'that, when the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases.' Constitutional Limitations, p. 78, 4th ed." The opinion then cites *Lowe v. Commonwealth,* and quotes the holding of that case as above set

out, and then proceeds: "This doctrine was approved in *Brown v. Grover*, 6 Bush (Ky.) 1, and has been followed in many unreported cases since that time."

Counsel for defendant cite *People v. Board of Supervisors*, 40 Mich. 585. In that case the syllabus holds: "Probate judges are not county but state officers, and are not subject to the control of any authority inferior to the legislature." In the opinion (p. 588) it is said: "It is very clear to us that the duties performed by probate judges are in no sense services performed for their respective counties, and that they are in no sense county officers. They exercise a portion of the judicial and prerogative power of the state, and cannot be subjected to the direction of any body inferior to the legislature. * * * The legislature is the only body having charge of the state interests. It cannot be liable to the local passions and prejudices which may and often do produce confusion in local affairs, and which, if allowed free action, may destroy the independence and break up the business of one of the most important branches of our judicial system." In the brief of counsel for plaintiffs, the only comment made upon the Michigan case is that "this decision is overruled by implication in the later case of *Secord v. Foutch*, 44 Mich. 89." We have examined that case, but are unable to discover how it in any manner overrules or departs from the case of *People v. Board of Supervisors, supra.*

After a careful examination of our constitution and of every case cited by counsel on both sides, we are constrained to hold that the only method of removing a county judge from office is by impeachment. It follows that the district court was without jurisdiction in the present action.

A number of other important and very interesting questions are discussed in briefs of counsel, but, inasmuch as the conclusion we have reached on the question of jurisdiction finally disposes of the case, they will not be considered.

The judgment of the district court is reversed, the action dismissed, and defendant reinstated in his office.

REVERSED AND DISMISSED.

REESE, C. J., concurring.

I agree to the judgment dismissing this case, but prefer to base my opinion upon what I conceive to be the conceded facts of the case.

As I understand the case, there is nothing in the evidence tending in any degree to show any moral turpitude in any act of defendant. True, during his previous terms he charged and collected more fees in certain cases than the law allowed, under the belief that it was his duty to make such collections. Under the provisions of our statute he became liable to each and every person so overcharged, the amount of damages being fixed by law, and that without reference to his knowledge or intention at the time of making the charge. But, the effort to remove one from office is an entirely different matter. As I understand the record, the charges were made under the belief that they were legal, and that all were accounted for to the proper officers of the county and nothing retained or appropriated to his own use; in short, that he had erroneously construed or read the law, but without any intention of profiting thereby. If public officers are to be turned out of office and disgraced for every error in judgment, no matter how conscientiously committed, there would seem to be no protection to any person from the highest to the lowest officers of the state, whether executive or judicial. To remove a man from office should require evidence of an intention to do wrong. At any rate, where such intention is so fully negatived as to convince the mind that no wrong was intended, the effort to remove should fail.

SEDGWICK, J., concurring.

The constitution of 1875 provides: "All civil officers of this state shall be liable to impeachment" (article V,

sec. 5), and "All offices created by this constitution shall become vacant by the death of the incumbent, by removal from the state, resignation, conviction of a felony, impeachment, or becoming of unsound mind" (article III, sec. 20). If, therefore, judges of the district court and judges of the county courts hold offices created by the constitution, they are subject to impeachment by virtue of the latter provision. Judges of the district courts were also made subject to impeachment by section 29, art. II, constitution of 1866, but there is no other provision in our present constitution for the impeachment of judges of the district court, except section 20, art. III, which provides that all offices created by this constitution shall become vacant by impeachment, unless they be regarded as "officers of the state." It seems to me there can be no doubt that the district courts and county courts are created by the constitution. Both of these offices are well defined by the constitution, and the judges of both are given large jurisdiction which cannot be taken from them by legislation. The provisions of the constitution in regard to district and county courts are self-enforcing, so that such courts would exist and have ample jurisdiction without any legislation whatever. Section 14, art. III, provides the same method of trial for all impeached officers, except judges of the supreme court. "Any officer other than a justice of the supreme court" is to be tried before that court. If, then, district and county judges are subject to impeachment by virtue of the provisions of the constitution, the legislature can provide nothing in regard to their removal from office that it could not provide as to any other officer whose impeachment is provided for in the constitution. Can the legislature provide for the removal from office of the governor, judges of the supreme court, and the other state officers? If not, how then can it be thought that the judges of the district court and county courts can be removed by or under legislative enactment?

The various provisions of the constitution bearing upon this question are not as definite as might be wished. The

question is a difficult one. It is desirable that all doubt as to the meaning of the constitution shall be removed as far as possible, and for these reasons. I concur with the majority.

LETTON, J., dissenting.

I am unable to concur in the majority opinion, and deem the matter of such importance as to require my reasons to be stated. The majority opinion holds that a statute providing for the removal of county officers for misdemeanors in office was repealed by the adoption of the constitution of 1875, at least so far as the office of county judge is concerned.

The solution of the question presented depends upon the construction to be given certain sections of the constitution of 1875. Bearing in mind the rule that repeals by implication are not to be favored, and the rule of constitutional interpretation that the courts in endeavoring to ascertain the meaning of language used in the instrument may look to existing conditions at the time the constitution was adopted—practically a corollary of the ancient rule that courts will look to the old rule, the mischief, and the remedy—it seems to me that the intention of the constitutional convention is not difficult to ascertain. The constitution of 1866 (article II, sec. 29) provided for the removal by impeachment of the judges of the supreme and district courts and the four officers of the executive department of the state only, but gave the legislature power to provide for the removal of county officers and justices of the peace for misdemeanors in office by proceedings "analogous to impeachment," as Judge IRVINE says in *Hopkins v. Scott*, 38 Neb. 661, 669. The statute in question was enacted in the exercise of this power. The new constitution changed the impeaching body from the house to the legislature as a whole, provided a new court for the trial of impeachments, and added to the list of impeachable officers by making "all civil officers of this state * * * liable to impeachment." Article V, sec. 5.

The majority opinion is based upon the proposition that the framers of the constitution of 1875 "classed county courts with the supreme and district courts as a part of the judicial system of the state," and the conclusion is drawn that, while a county judge is a county officer in the sense that he is elected by the voters of a single county, he is not a county officer within the meaning of the constitution, and that therefore the statute was repealed by implication when that instrument was adopted. This view seems to be largely based upon the provisions of sections 14, 20, art. III, and section 5, art. V, of the 1875 constitution. Section 14, which is set forth in the majority opinion, confers the power of instituting impeachment proceedings upon the legislature in joint session, and provides: "A notice of an impeachment of any officer, other than a justice of the supreme court, shall be forthwith served upon the chief justice," etc. Section 20, art. III, is set out in the opinion of the majority. It provides how vacancies may occur in offices created by the constitution. Section 5, art. V, provides: "All civil officers of this state shall be liable to impeachment for any misdemeanor in office." These sections are the only provisions of the 1875 constitution which treat of the subject of impeachment.

In the opinion great stress is placed upon the fact that the powers and jurisdiction of county courts are enumerated in article VI of the constitution relating to the judiciary department. I can see no reason for distinguishing in this respect between the county court and other inferior courts or judicial officers named in the article. Section 1 provides: "The judicial power of this state shall be vested in a supreme court, district courts, county courts, *justices of the peace, and police magistrates,* and in *such other courts* inferior to the district courts as may be created by law for cities and incorporated towns." Section 21 of the same article provides that, "in case the office of any judge of the supreme court, or of any district court, shall become vacant * * * the vacancy shall be filled by appointment by the governor," etc.; and that "va-

cancies in all other elective offices provided for in *this article* shall be filled by appointment * * * in such manner as the legislature may provide." A clear distinction is here drawn between the courts of counties and smaller subdivisions, and the higher courts of the state. The more important office of judge of the supreme court or of the district court must be filled by the governor until an election can be had, but the legislature may determine how a vacancy in the office of county judge, a justice of the peace, or a police magistrate may be filled. If the dividing line lies between the county judge and the other magistrates, as the majority think, why this distinction? Again, the district judge may hold court in any county in the state upon the request of the judge of that district. The salary of a district judge is paid by the state and is fixed in the constitution. Section 20, art. III, providing how offices created by the constitution shall become vacant, is not entitled in this connection to the importance given it in the majority opinion, because impeachment is only one of the six causes for a vacancy. Some of the offices may become vacant by resignation, others by conviction of a felony, and others by impeachment. It is also to be noticed that the same section provides that "the legislature shall provide by general law for the filling of such vacancy, when no provision is made for that purpose in this constitution." It will be seen by reference to other provisions of the constitution that if a vacancy occur in the office of governor, the duty shall devolve upon the lieutenant governor, and that in case of a vacancy in the office of auditor of public accounts, treasurer, secretary of state, attorney general, commissioner of public lands and buildings, and superintendent of public instruction, it shall be filled by appointment by the governor. There runs throughout the constitution a distinct division. The executive and judicial offices and offices of importance and dignity, when vacant, are to be filled by the governor, and such officers can only be removed by impeachment. The cause for declaring other offices vacant may be designated by the

legislature, and the legislature may also provide for the manner of filling vacancies.

As to county judge, the constitution says: "There shall be elected *in and for each organized* county one judge, who shall be judge of the county court *of such county.*" Const. art. VI, sec. 15. The amount of his compensation is fixed by the legislature. He received it in a manner directed by that body, and from fees collected in the county. By no allowable stretch of the imagination can he be said to be a "civil officer of this state." The meaning of the phrase "officers of the state," or "state officers," has many times been construed. While in one sense almost every county and city officer indirectly is an officer of the government of the state, used in such a connection the courts interpret the words "civil officers of this state" to mean officer of the *state,* as distinguished from those of any county, municipality, or other governmental subdivision. *State v. Dillon,* 90 Mo. 229; *Opinion of Justices,* 167 Mass. 599; *Turner v. Cotton,* 93 Tex. 559; *Ex parte Wiley,* 54 Ala. 226; *In re Speakership,* 15 Colo. 520, 11 L. R. A. 241. I can see nothing in the reasoning of the opinion as to the office of county judge which is not equally applicable to the offices of justice of the peace or police magistrate. I can nowhere find authority conferred upon this court to draw a line between justices of the peace, police magistrates, and county judges, when the constitution itself draws no such line. The argument that, if the legislature has power to provide for the removal of county judges otherwise than by impeachment, it also has the power to remove judges of the supreme and district courts and state officers in like manner seems to be unsound. Where in the constitution special reference has been made to particular officers, and a special tribunal created for the impeachment of such officers, the special provisions control.

The case of *Lowe v. Commonwealth,* 60 Ky. 237, relied upon in the opinion is entirely consistent with these views. The legislature has no power to enact a statute such as this and make it apply to the office of supreme and district judge or state officers, because as to such officers, to quote

from that opinion, the makers of the constitution "declared upon what grounds and in what mode an incumbent of such office may be removed before the expiration of his term," but there is no restriction to be found as to other officers.

With respect to the quotation from the case of *People v. Board of Supervisors,* 40 Mich. 585: This case was decided in 1879. The opinion was written by Judge Campbell, the controversy being over whether the county supervisors had the power to change the compensation fixed by the legislature for probate judges, and it was held that the power to fix salaries lay in the legislature. The very next year the same judge, in *Secord v. Foutch,* 44 Mich. 89, which was an action to try the title to the office of probate judge, said: "The facts were all agreed upon, but the circuit judge, on the hearing, decided he had no jurisdiction, and dismissed the case. He did so on the ground that this court had held that the judge of probate was not a county officer, but was a part of the judiciary system of the state. Such judges are not 'state officers' in the sense in which that term is used in the statutes." The former case, therefore, is no authority upon the point presented.

To sum up: The constitution of 1866 provided for the impeachment of certain officers therein named. The constitution of 1875 added to the number of executive officers, and provided: "All civil officers of this state shall be liable to impeachment," etc. The statute was in force providing for the removal of county officers, as was done in this case, and nothing in the new constitution, either directly or impliedly, repealed it. It seems to argue very little practical common sense in the constitution makers to say they took the view that the cumbersome and unwieldy machinery of impeachment was necessary in order to remove a county judge for misdemeanors in office. I am satisfied that the wisdom, the experience and the sound judgment of that distinguished body of men was such that they never contemplated the possibility of such a construction of the constitution as is adopted by the majority opinion.