REQUESTED BY: Dear Senator Newell:
This is in response to your request for an opinion concerning the constitutionality of a bill draft which you stated `deals with the criminal conviction of an elected official.' We note that the bill draft attached to your correspondence by its terms appears to encompass both elected and appointed officers of the state or a political subdivision. However, we assume from your inquiry that your concern is directed to the constitutionality of the bill draft as applied to elected officers, therefore we will likewise focus our discussion on that issue.
The bill draft essentially provides that if a state officer or officer of a political subdivision is convicted of a crime, he or she shall be temporarily suspended from office pending completion of an appeal.
An acting officer shall be appointed by the appointing authority. If exonerated on appeal, the accused officer shall be reinstated with back wages. The bill draft does not by its terms describe the occurrences if the conviction is affirmed on appeal. However, the provisions appear to us to imply that the temporary suspension would thereby become permanent.
Initially, we note that the word `crime' is commonly interpreted in a broad and general sense to encompass all infractions of criminal law, including felonies and misdemeanors. However, the word `crime' has occasionally been construed to designate only more serious offenses. Violations of traffic offenses and ordinances have been held not to constitute `crimes.' 22 C.J.S., Criminal Law § 1, p. 3.
In our opinion, the constitutional issue raised by this bill draft concerns whether the legislature has the power to enact statutes which provide additional grounds and modes of suspension and removal of officers. It is undisputed that the legislature has plenary legislative authority, except as limited by the state and federal constitutions. OrleansEducation Association v. School District of Orleans,193 Neb. 675, 229 N.W.2d 172 (1975). The issue presented herein concerns whether there exists such a constitutional limitation.
The language, `state officer or officer of a political subdivision,' employed in the bill draft encompasses both constitutional offices and offices created by statute. Our analysis and resolution of the issue presented herein differs based on the type of office considered.
Generally, where a state office is created by statute, the legislature may provide for the grounds and modes of suspension or removal from office. 81A C.J.S. States 96, p. 488, § 98, p. 494. See, Fitzgerald v. Kuppinger,163 Neb. 286, 79 N.W.2d 547 (1956). Similarly, the legislature generally has plenary power to provide for the grounds and modes of removal or suspension of statutory officers of political subdivisions of the state. See, 20 C.J.S.,Counties, § 108, p. 908.
The more difficult question presented is whether the Nebraska Constitution restricts the legislature's power to prescribe grounds and modes of suspension or removal of constitutional officers. In Conroy v. Hallowell, 94 Neb. 794,144 N.W. 895 (1913), the court declared unconstitutional a statute which provided the grounds and manner of removal of county officers, including county judges. Upon concluding that county judges were constitutional officers, the court stated:
 ". . . Having provided, fully, by section 20, art. III, and section 5, art. V, the grounds upon which a constitutional office may become vacant, we do not think it is within the power of the legislature to add any other or additional grounds; and, having provided the manner in which the office shall be declared vacant, viz., by impeachment of its incumbent, it is not within the power of the legislature to provide for any other or different method of removal. If this be not so, then the legislature may by statutory enactment provide that the governor, or any other state officer, may be put upon trial upon the accusation of any individual elector, upon some ground other than contemplated by the constitution, and before the district court, and compel him to defend his right to his office upon such complaint, based, it may be, upon prejudice, or prompted by a desire for revenge, instead of giving the official, who has been elected by the people, the right to hold his office until the legislature in joint convention assembled has, deliberately decided, by a majority vote of all the members elected, that he should be put upon his trial, and that when so put upon trial it should be in the supreme court. That there are a few cases inferentially holding that way, we concede; but the weight of authority and the better reasoning are to the contrary." Id. at 800-801.
The issue was again considered by the Nebraska Supreme Court in Laverty v. Cochran, 132 Neb. 118, 271 N.W. 354
(1936). In this case the court declared unconstitutional an act which provided for the removal of constitutional officers upon a finding by the state bonding board that the misconduct of the officer jeopardized the bonding fund. The court stated that:
 ". . . It is beyond the power of the legislature to provide for the removal or suspension of a constitutional officer where the Constitution creates the office, fixes its terms, and the grounds and manner of removal." Id.
at 125.
Most recently, this rule was followed in Fitzgerald v.Kuppinger, 163 Neb. 286, 79 N.W.2d 547 (1956). The act declared unconstitutional in this case provided that a vacancy in office occurred if the incumbent filed nomination papers for election to another office. Upon reiterating with approval the above-quoted pronouncements in Conroy, supra,
and Laverty, supra, the court noted that:
 "Article III, section 20, of the Constitution of 1875 is the same as the present Article III, section 23. As is already apparent this section defines the grounds for vacation of a constitutional office. Article V, section 5, of the Constitution of 1875 is the same as the present Article IV, section 5. It prescribes the method whereby the holder of a constitutional office may be removed. As pointed out therein the removal shall be by impeachment." Id. at 292.
We point out that a county attorney, a statutory officer, was the plaintiff who challenged the statute inFitzgerald, supra. The plaintiff's contention was that with the striking down of the act as to constitutional officers no valid and complete act remained, thus the statute was unconstitutional and void as to statutory officers. The court essentially agreed with the plaintiff upon concluding that the unconstitutional portion of the act was not severable.
We note that Article III, section 23 of the Constitution of Nebraska was repealed in 1972. However, Article IV, section 5 of the Nebraska Constitution, which provides that the method of removal shall be by impeachment, remains unchanged.
In conclusion, it is our opinion that the bill draft is constitutionally suspect for the reason that it is beyond the power of the legislature to provide for the suspension or removal of constitutional officers in a manner other than by impeachment. If the bill draft, by its terms, is limited to officers created by statute, in our opinion, it could probably then withstand constitutional challenge.