STATE OF NEBRASKA EX REL. NEBRASKA
STATE BAR ASSOCIATION, RELATOR,
V. RICHARD W. KREPELA, RESPONDENT.

610 N.W.2d 1

Filed May 5, 2000.   No. S-99-430.

John W. Steele, Assistant Counsel for Discipline, for relator.

Clarence E. Mock and Michael J. Tasset, of Johnson and Mock, for respondent.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

## NATURE OF CASE

This is an original action initiated by the Counsel for Discipline of the Nebraska State Bar Association (Bar Association) seeking discipline of Richard W. Krepela, a sitting

county court judge, for conduct which occurred prior to the time that Krepela took office as a judge.

## STANDARD OF REVIEW

■ Jurisdictional questions can be raised by the Nebraska Supreme Court sua sponte. See *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999).

■ Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997).

## FACTS

Krepela was admitted to the practice of law in the State of Nebraska on January 26, 1976, and subsequently was elected county attorney for Madison County, Nebraska. In December 1989, Krepela was appointed to the office of county court judge for the Seventh Judicial District, and he presently occupies that position.

In 1999, the Counsel for Discipline filed charges against Krepela, claiming that he had engaged in conduct which violated the Code of Professional Responsibility while he held the position of Madison County Attorney. On September 3, 1999, the Honorable William D. Blue, the referee appointed in this matter, heard evidence on the charges. On September 17, the referee issued a report, finding by clear and convincing evidence that Krepela had violated Canon 1, DR 1-102(A)(1) and (4) through (6), and Canon 7, DR 7-102(A)(3) through (8), and recommending that Krepela be censured and reprimanded.

## EXCEPTIONS

The Bar Association takes exception to the recommended sanction of censure and public reprimand, arguing that the gravity of Krepela's actions requires a more severe sanction. Krepela takes exception to one of the referee's findings.

## ANALYSIS

We first address whether the Counsel for Discipline has jurisdiction to file formal charges against a sitting member of the

judiciary for acts committed prior to that person's becoming a judge. Jurisdictional questions can be raised by this court sua sponte. See *Ryan v. Ryan, supra.*

■ The Nebraska Supreme Court governs the admission of lawyers to the practice of law and their professional conduct; it is vested with the inherent power and authority to discipline lawyers, including the powers to disbar, suspend, and/or censure, as the nature and circumstances of the case warrant. See *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N.W. 265 (1937). In order to regulate lawyers, the Supreme Court created the Bar Association in 1937 and set forth the Rules Creating, Controlling, and Regulating Nebraska State Bar Association. See *In re Integration of Nebraska State Bar Ass'n, supra.*

Article III of the Rules Creating, Controlling, and Regulating Nebraska State Bar Association explains that the membership of the Bar Association includes all those who are admitted to practice law in Nebraska. The membership is currently divided into four classes: active members, inactive members, law student members, and emeritus members. *Id.* Neb. Ct. R. of Discipline 1(A) (rev. 1996) states that "[e]very attorney admitted to practice in the State of Nebraska is subject to the exclusive disciplinary jurisdiction of the Court." Since the Bar Association is the organization created by this court to regulate members of the bar, all complaints concerning alleged violations of the Code of Professional Responsibility are processed through disciplinary committees and the Counsel for Discipline. See *State v. Douglas*, 217 Neb. 199, 349 N.W.2d 870 (1984).

■ A separate framework has been created for disciplining members of the judiciary. There are two methods by which a sitting judge may be disciplined. The first method is via impeachment. Neb. Const. art. III, § 17, grants the Legislature impeachment powers, and Neb. Const. art. IV, § 5, states that "[a]ll civil officers of this state shall be liable to impeachment for any misdemeanor in office." Members of the judiciary are considered civil officers and thus may be removed from office by impeachment. *Conroy v. Hallowell*, 94 Neb. 794, 144 N.W. 895 (1913). In *Conroy*, the court first recognized that the office of county judge is a constitutional office. At that time, the only method of

removing a county judge from office was by impeachment. *Id.* Pursuant to article III, § 17, the act or omission for which a civil officer may be impeached and removed from office must relate to the duties of the office. *State v. Douglas, supra.*

The second method for disciplining a member of the judiciary is via the Commission on Judicial Qualifications (Commission). See Neb. Const. art. V, § 30. Article V, § 30, and its enabling legislation, Neb. Rev. Stat. § 24-715 et seq. (Reissue 1995), explain that a justice or judge of any court of the state may be reprimanded, disciplined, censured, or suspended without pay for a definite period of time not to exceed 6 months or removed from office for (1) willful misconduct in office, (2) willful disregard of or failure to perform his or her duties, (3) habitual intemperance, (4) conviction of a crime involving moral turpitude, (5) disbarment as a member of the legal profession licensed to practice law in the State of Nebraska, or (6) conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

Additionally, on recommendation of the Commission or on its own motion, the Supreme Court shall remove a justice or judge when in any court of the United States such justice or judge pleads guilty or no contest to a felony or has been found guilty of a crime punishable as a felony or any other crime that involves moral turpitude. Neb. Const. art. V, § 30(4). Any citizen in the State of Nebraska may bring a complaint before the Commission with reference to the activities or qualifications of any justice or judge to request that the Commission consider the qualifications of any justice or judge of any of the courts of the State of Nebraska. Neb. Const. art. V, § 30(1).

Thus, the issue presented is whether the Counsel for Discipline may initiate charges against a sitting member of the judiciary. The issue is not whether a sitting judge may be disciplined, but who has the authority to bring disciplinary proceedings against a judge.

The Constitution and statutes treat judges and lawyers differently. In *Chambers v. Central Committee of Oklahoma Bar Ass'n*, 203 Okla. 583, 224 P.2d 583 (1950), the respondent was a sitting judge who claimed that the Oklahoma Bar Association did not have authority to take disciplinary action against him.

The bar association argued that it had authority to proceed against any Oklahoma judge if it deemed that such judge was guilty of misconduct on the bench. The Oklahoma Supreme Court disagreed, reasoning that the bar association's position overlooked the fact that one who assumes the bench is no longer an attorney at law and is precluded from practicing law so long as he or she holds the judicial position.

In *In re Proposed Disciplinary Action,* 103 So. 2d 632 (Fla. 1958), the Florida Supreme Court stated that since the assumption of judicial duties suspends all rights and privileges to engage in the practice of law, becoming a judge should also operate as a suspension of disciplinary procedures designed simply to ensure that such rights and privileges shall not be exercised by one who is unfit to practice law.

Neb. Rev. Stat. § 7-111 (Reissue 1997) states in part:

No person shall be permitted to practice as an attorney in any of the courts of this state while holding the office of judge of the Supreme Court, Clerk of the Supreme Court, judge of the Court of Appeals, judge of the district court, judge of the Nebraska Workers' Compensation Court, or judge of the county court.

Neb. Const. art. V, § 14, provides in part that "[n]o judge of the Supreme or district courts shall act as attorney or counsellor at law in any manner whatsoever." Since the Counsel for Discipline has authority to discipline only practicing attorneys, and judges are prohibited from practicing law once they assume office, we conclude that the Counsel for Discipline may not initiate the discipline of a sitting judge.

Furthermore, the Nebraska Constitution has set forth the procedures for disciplining judges, and such procedures should be followed. In *In re Proposed Disciplinary Action, supra,* the petitioner, a circuit judge, sought an order directing the Florida bar to cease and desist from taking disciplinary action against him and declaring that the bar was without jurisdiction to apply or enforce disciplinary provisions against a judge. The Florida bar claimed that it had jurisdiction because the disciplinary matter related solely to alleged acts which occurred prior to the petitioner becoming a judge. The Florida Supreme Court stated that "the action undertaken by the Bar has no legitimate objective

other than the ultimate removal of petitioner from office, a result intended under our Constitution to be accomplished only by impeachment." *Id.* at 633. Because the conduct which the Florida bar attacked was not serious enough to warrant impeachment, the court concluded that subjecting an incumbent judge to the jurisdiction of the bar would accomplish indirectly what could not be accomplished directly.

In *In re Bar Association*, 137 Colo. 357, 325 P.2d 932 (1958), the bar association filed a petition asking the Colorado Supreme Court to explain its powers. In regard to the bar association's power over judges, the court stated that insofar as the conduct of a judge of any court of record in that state was questioned, the court and the grievance committee of the bar association were without power or authority to institute or conduct disciplinary proceedings of any kind, since the state constitution fixed the remedy at impeachment. The court explained that judges of that state were responsible solely to the people and that the court's disciplinary power was limited to the regulation of lawyers. The grievance committee of the bar association, acting as the investigating agent for the court, had no greater power or authority than the court itself.

In *Alabama State Bar ex rel. Steiner v. Moore*, 282 Ala. 562, 213 So. 2d 404 (1968), the Alabama Supreme Court addressed whether a judge could be disciplined or disbarred by the board of commissioners of the bar commission during the term in which the judge held office for acts performed in a judicial capacity. The court concluded that the bar could not remove or discipline a judge for conduct in his judicial capacity because Alabama's constitution provided for impeachment as the exclusive method of removal. The court reasoned that the forum for actions against lawyers was a separate forum or jurisdiction from that provided by the state constitution for ousting judges.

■ Similarly, the Nebraska Constitution sets forth the means by which a member of the judiciary may be disciplined. Originally, only the Legislature had authority to remove a judge via impeachment. However, in 1966, article V, § 30, of the Nebraska Constitution was adopted. Thus, we conclude that the only means for disciplining a member of the judiciary are by

impeachment or by filing a complaint with the Commission, as set forth in the Nebraska Constitution.

If the Counsel for Discipline were allowed to file charges against a sitting member of the judiciary, there is potential that a judge could be removed from office in a manner not contemplated by the Nebraska Constitution. For example, Neb. Rev. Stat. § 24-505.01(4) (Reissue 1995) provides that no person shall be eligible for the office of county court judge unless he or she is currently admitted to practice before the Nebraska Supreme Court. Therefore, in order to obtain this judicial office, a candidate must be a member of the Bar Association. If the Counsel for Discipline were allowed to file charges against a county court judge and we were to adopt a recommendation that the judge be disbarred or suspended, then that judge would effectively be removed from the bench by a means other than that set forth in the constitution. Such a result would be unconstitutional. See, also, *In re Jones*, 202 La. 729, 12 So. 2d 795 (1943) (to allow disbarment of judge during tenure of office, when one of constitutional requirements for holding such office is that judge must be attorney at law, would be to sanction by doing indirectly that which cannot be done directly).

Furthermore, were we to allow the Counsel for Discipline to proceed against members of the judiciary, the independence of the judiciary would be compromised. In *Chambers v. Central Committee of Oklahoma Bar Ass'n*, 203 Okla. 583, 224 P.2d 583 (1950), the Oklahoma Supreme Court found that public policy dictated that judges not be disciplined by the bar association. The court stated:

> The judges of all our courts must have independence . . . . While that independence does not give them the right to indulge in [unfit] conduct . . . it surely must give them freedom from supervision by the practicing attorneys in their courts and freedom from any requirement that they answer and stand trial before the attorneys, and before the Bar Association . . . .
>
> The opposite rule and practice contended for, as we have heretofore pointed out, could not accomplish any good, but would result in nothing more than discord, and could result in confusion, pernicious partisan political activity concern-

ing the judiciary, and other results not beneficial to the administration of justice, or desirable in connection with the service to be rendered by the bench and bar.

*Id.* at 586, 224 P.2d at 586-87.

In *Alabama State Bar ex rel. Steiner v. Moore*, 282 Ala. 562, 566, 213 So. 2d 404, 408 (1968), the Alabama Supreme Court addressed this issue and concluded that allowing the bar to discipline judges

would be an act removing a constitutional armor, we think properly placed, around a judge so that he may remain free to function without fear or favor, and without subjecting his actions to discipline by lawyers who may be practicing before him, through the office of the State Bar Association, regardless of how honorable the motives of the would-be prosecutors may be.

It may appear that the Bar Association is empowered to file charges against a sitting judge, since article V, § 30(1)(e), of the Nebraska Constitution allows for discipline of a judge for "disbarment as a member of the legal profession licensed to practice law in the State of Nebraska." Disbarment as a ground for removal from office as set forth in article V, § 30(1)(e), would, at first blush, appear to be authority for the position that the Bar Association could proceed against a judge for disbarment prior to the Commission's bringing an action to remove the judge from office. However, we do not interpret article V, § 30(1)(e), or § 24-715 et seq. as supporting this position.

The date of the constitutional enactment of article V, § 30, is important to our consideration. Article V, § 30, was adopted in 1966, and at that time, § 7-111 (Reissue 1962) provided:

No person shall be permitted to practice as an attorney in any of the courts of this state while holding the office of Judge or Clerk of the Supreme Court, or judge of the district court, or county judge in any county having a population of more than sixteen thousand, or judge of a municipal court[.]

Therefore, at the time article V, § 30, was adopted, county judges in counties with a population of less than 16,000 could also practice law, subject to the restriction that where an attor-

ney at law held the office of county judge, the attorney was not permitted to practice as an attorney in any action, matter, or proceeding brought before himself or herself or appealed from his or her decision to a higher court. Logically, such a county judge could be disbarred for unethical conduct committed in the practice of law. See, *State ex rel. Nebraska State Bar Assn. v. Conover*, 166 Neb. 132, 88 N.W.2d 135 (1958) (misconduct of lawyer who also serves as judge may justify disbarment as member of bar); *State ex rel. Nebraska State Bar Assn. v. Wiebusch*, 153 Neb. 583, 45 N.W.2d 583 (1951) (misconduct of lawyer who also serves as judge may constitute grounds for suspension or disbarment, and violation of judicial oath only aggravates offense of violating oath as lawyer).

Section 7-111 was subsequently amended by 1972 Neb. Laws, L.B. 1032, which removed the exception for county judges. Presently, § 7-111 allows Workers' Compensation Court judges appointed on a temporary basis pursuant to Neb. Rev. Stat. § 48-155.01 (Reissue 1998) to practice law. Thus, in some instances, acting Workers' Compensation Court judges may be practicing attorneys and are subject to the jurisdiction of the Bar Association for misconduct that occurs while they are acting as attorneys. Consequently, we conclude that article V, § 30(1)(e), and § 24-715 et seq. apply to judges who were allowed to practice law, such as county judges prior to 1972 and Workers' Compensation Court judges appointed pursuant to § 48-155.01. We do not construe article V, § 30(1)(e), and § 24-715 et seq. as granting authority to the Bar Association to commence disciplinary actions against sitting judges.

In summary, the Counsel for Discipline may not initiate the discipline of a sitting judge. When a member of the judiciary assumes the bench, he or she is prohibited from practicing law. The function of the Counsel for Discipline is to assist the Supreme Court in regulating the practice of law within this state. Since members of the judiciary do not practice law, the Counsel for Discipline has no role in disciplining sitting judges. The Nebraska Constitution sets forth the procedures for disciplining sitting judges and does not grant this power to the Counsel for Discipline. Ultimately, this court must impose the discipline. See article V, § 30.

We next consider whether the Commission is authorized to discipline a sitting judge for conduct which occurred before the judge took office. In *State ex rel. Turner v. Earle*, 295 So. 2d 609 (Fla. 1974) (superseded by constitutional amendment as stated in *Inquiry Concerning Davey*, 645 So. 2d 398 (Fla. 1994)), a dissent by Justice Ervin also addressed whether a commission on judicial qualifications had jurisdiction to investigate and discipline an incumbent circuit judge for misconduct alleged to have been committed prior to the time he became a judge. The dissent concluded that insofar as any alleged misconduct of a judge may reasonably be considered to have a pertinent bearing or impact upon the question of the judge's present fitness, it was within the jurisdiction of the commission to investigate. Any overt act of misconduct having a present rational relation to the nature of the judge's character could be considered.

In that case, the alleged misconduct occurred only 19 months prior to the time the judge took office. The dissent concluded that it was unrealistic to find alleged acts of misconduct occurring only 19 months earlier as being barred from the commission's consideration. The dissent stated:

> While there are no technical absolutes as to the timeliness of Judicial Commission investigations, there are, of course, practicable limitations both overt and subtle on its investigative authority which the native intelligence of reasonable men in keeping with principles of good conscience require the Commission to apply. Many things in the background of a judge remote in time to an investigation should not be "dredged up" for consideration. No investigation should be carried backward in time to the point of capricious ridiculousness. The passage of time and changed environmental or behavioral conditions may have eroded away early acts of misconduct in a judge's life and brought rehabilitative and redemptive processes to bear, completely reforming his character.

*Earle*, 295 So. 2d at 621.

The dissent reasoned that if from the totality of the circumstances relating to a judge's character there is strong reason to infer from previous misconduct that the judge has some present weakness of judicial character and possibly a predilection to

corruptive influences, the commission should take the same into account.

In the case at bar, we conclude that article V, § 30(1)(f), provides the Commission with authority to consider the acts of a judge that occurred prior to the time the judge assumed the bench. Article V, § 30(1)(f), states that a judge may be disciplined for any conduct prejudicial to the administration of justice which brings the judicial office into disrepute. We conclude that article V, § 30(1)(f), grants the Commission authority to investigate any complaint concerning the qualifications of a judge, including actions of the judge that occurred prior to the time the judge took office.

Our conclusion is consistent with the American Bar Association's Model Rules for Judicial Disciplinary Enforcement § I, Rule 2B(1) (1994). The American Bar Association recommends that a commission on judicial conduct be created and directs that the commission shall have jurisdiction "regarding allegations that misconduct occurred *before* or during service as a judge." (Emphasis supplied.) *Id.* Thus, we conclude that the Commission may consider Krepela's conduct as a county attorney to determine whether he should be disciplined for conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

## CONCLUSION

The Counsel for Discipline may not initiate a proceeding to discipline a sitting judge. Therefore, we dismiss these proceedings.

DISMISSED.

HENDRY, C.J., and MILLER-LERMAN, J., not participating.