EDWARD M. SEARLE, JR., APPELLANT, V. HARDIN YENSEN ET AL., APPELLEES.

FILED JULY 19, 1929. No. 26755.

*Mothersead & York,* for appellant.

*White & Lyda* and *Perry, Van Pelt & Marti, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, and DAY, JJ., and REDICK and STEWART, District Judges.

REDICK, District Judge.

This is a suit in equity to enjoin the issuance by the

Gering Valley Hydro-Electric Light and Power District of bonds for the construction or purchase of main transmission lines or distribution lines for the purpose of furnishing electrical energy for light, heat and power to the residents of the district. The district is composed of a compact group of lands in Scotts Bluff county surrounding the city of Gering, and plaintiff, a resident of Douglas county, is the owner of a tract of land within the boundaries of the proposed district. The district court granted a temporary injunction, but afterwards dissolved the same, and upon final hearing rendered decree for the defendants, who were the board of directors of the district, and plaintiff appeals.

The district was organized under chapter 108, Laws 1927, which is an act complete in itself, and purports to authorize the organization of such districts upon petition of 25 per cent. of the electors of such district, 15 per cent. of whom shall be freeholders therein. The provisions of that act may be summarized as follows: Section 2 provides that the district shall consist of one or more units, either "urban" or "rural," or both; that a petition signed by 25 per cent. or more of the electors of the proposed district shall be filed with the clerk of the district court of the county, suggesting the boundaries of the district and the units therein, accompanied by suitable maps, and asking that the proposed district be declared a body corporate, and that the district court hold a hearing upon notice and fix the boundaries of the district and units respectively, provided that any proposed unit where the petition was not signed by 15 per cent. of the resident freeholders shall be excluded from the district; provided for the giving by the petitioners of a bond conditioned to pay all expenses if the district was not formed, and provided for the spreading of the proceedings upon the records of the court. Section 3 provides for a hearing by the district court after certain published notice. Section 4 defines the powers of the court. Section 5, upon the entering by the court of an order incorporating the

district, requires the findings and orders of the court to be submitted to the resident freeholders of the district for approval upon publication of notice thereof.

Then follow several sections covering the manner of holding the election, powers of the district, election of board of directors, the powers of the board, etc.

Section 16 authorizes the district to issue bonds for the purchase of electricity and the transmission and sale thereof, for the construction or purchase of a main existing line, or the construction of a main plant, upon the submission of the question at a general or special election, provided 60 per cent. of the electors voting shall approve the same, and authorizing the levy of a tax upon the real and personal property within the district to pay the principal and interest of said bonds. Section 17 divides the funds of the district into general and special. Section 18 provides for the letting of contracts for the construction of plants, transmission or distribution lines. Section 19 provides for the incorporation, on the order of the district court, of each of the hydro-electric units comprising the district, and authorizes them to issue bonds and collect taxes to meet the same, the proceeds to be used for purchasing transmission or distribution lines, which are declared to be works of internal improvement. Section 22 provides for an appeal by any person owning property within the district from the final order of the district court incorporating the district, and for the payment under protest of any taxes levied, and the bringing of an action to recover the same.

A large number of objections are made to the act raising the question of its constitutionality. The most serious one, in our view, and the only one which we deem it necessary to discuss, relates to sections 3 and 4 of the act, by which it is contended that the legislature has attempted to impose upon the district court the performance of non-judicial duties and to delegate to such court a part of its legislative power. This requires a construction of the sec-

tions attacked, and for a better understanding of the question they are set out in full.

"Section 3. Upon the filing of said petition, maps, plats, and bonds, the district court shall set a time and place for a hearing on said petition; and shall cause the petitioners to publish a notice within each of the counties where said units are located and within which the proposed district or any part of it will lie, of the time and place of such hearing, which notice shall state the date of filing the petitions; the names of the petitioners; description of the units mentioned in said petition as constituting the proposed district; the boundaries of said proposed district; and the prayer of the petition, which shall be published once a week for at least four consecutive times in each of said newspapers, and any freeholder within said proposed district may file objections to said petition and the prayer thereof on or before the third Monday after the last publication of said notice."

"Section 4. From the testimony adduced at such hearing the district court shall within ten (10) days after the completion of such hearing determine whether or not the district should be incorporated; and whether the suggested boundaries are reasonable and proper for the public convenience and welfare. And the court may change, alter and fix the boundary lines of such district with the end in view of promoting the interest of said power district, its units, 'rural' or 'urban,' provided that lands not included in the original petition and maps shall not upon such hearing be included in the boundaries as fixed and determined by the district court, if said boundaries be altered or changed as aforesaid, unless the owner or owners of the land or lands to be added thereto shall petition the court in writing so to do on or before said answer day. As a part of the evidence offered at said hearing the petitioners shall exhibit a certified copy of the individual and aggregate assessed valuation of all the units proposed to be included in said district and the court shall make a finding thereof in its order. If a district is formed by the court, there

shall also be included in said order and submitted in the proposition to the electors a proposal for a tax sufficient to pay the preliminary expense of organization and the expense of the election."

The act in question was doubtless inspired as a consequence of our holding unconstitutional a former act upon the same subject (Comp. St. 1922, secs. 7147 to 7154, as amended by chapter 169, Laws 1923) in the case of *Elliott v. Wille*, 112 Neb. 86. That act was there held invalid as a delegation of legislative power to a group of nonofficial individuals, as it made it the duty of the county board, upon the filing of a petition by certain freeholders, to submit to the electorate of the proposed district the question of its organization. The boundaries of the district were first determined by a certain number of freeholders, and then, "without any provision for determination by a competent tribunal whether the creation of the district and the construction of the improvement will promote public health, convenience or welfare, and without any provision for determination whether the owner's property has been arbitrarily or unjustly included in the district, or whether his property will receive any benefit from the proposed improvement," the proposition was to be submitted to the electors, who were required to vote either for or against the formation of the corporation. It was held that by such proceeding the taking of private property was authorized without compensation and without due process of law. To meet these objections, it is apparent that, by the act under consideration, the legislature has provided for the submission, after due notice, of the question whether or not the district shall be organized as a corporation, whether such organization will be for the public convenience and welfare, and the question of the boundaries of such district, to the judgment of the district court of the county in which some or all of the lands are located. Is this such a delegation of power as the legislature may constitutionally make? Or is the district court a competent tribunal for the determination of those questions?

The division of governmental powers into executive, legislative and judicial in this country is a subject familiar, not only to lawyers and students, but is a part of the common knowledge of the citizen. It represents, probably, the most important principle of government declaring and guaranteeing the liberties of the people, and has been so considered, at least, since the famous declaration of Montesquieu that— "There can be no liberty * * * if the power of judging be not separated from the legislative and executive powers. * * * Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would be the legislator: Were it joined to the executive power, the judge might behave with all the violence of an oppressor." In fact, the above proposition is declared in direct language by section 1, art. II, of our Constitution:

"The powers of the government of this state are divided into three distinct departments, the legislative, the executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others except as herein expressly directed or permitted."

The question submitted, therefore, is of supreme importance and requires our most serious consideration, notwithstanding the strongest presumptions of validity to which a legislative act is entitled, and the extreme disinclination on the part of one of such departments to criticise or interfere with the acts of another. As the Constitutions of the respective states are the supreme law within their respective jurisdictions and are limitations of power, it is necessary that authority exist somewhere to determine whether or not the limitations have been exceeded. From the early history of this country and after much clash of opinion and sometimes bitter argument, the doctrine is now firmly established that this delicate duty devolves upon the judiciary. We, therefore, approach the question with an earnest desire to sustain the validity of the act, but with a profound sense of our duty to preserve the supremacy of the Constitution.

The power of the legislature to delegate a part of its legislative functions to municipal corporations or other governmental subdivisions, boards, commissions, and tribunals, to be exercised within their respective jurisdictions, cannot be denied; but the recipient of such powers must be members of the same governmental department as that of the grantor. Otherwise a confusion and duplication of powers would result, against which the section of the Constitution above quoted is directed. The legislature may not impose upon the judiciary or the executive the performance of acts or duties not properly belonging to those departments respectively. *People v. Nussbaum*, 55 App. Div. (N. Y.) 245. The above considerations are not to be deemed as prohibiting the legislature from imposing upon the other departments the performance of new and additional duties, but the duties so imposed upon either must be of the character and quality which such departments, respectively, are authorized or may be required to perform.

Let us then inquire of the nature of some of the duties imposed upon the district court by the sections under attack. They are set forth in section 4 and are as follows: (1) To determine from the testimony adduced at the hearing whether or not the district should be incorporated; (2) whether the suggested boundaries are reasonable and proper for the public convenience and welfare; (3) change, alter and fix the boundary lines of such district with the end in view of promoting the interest thereof and its units; and (4) to submit to the electors a proposal for a tax sufficient to pay the expenses of organization and election.

These questions are all political and legislative in their nature. The duty of courts is to declare the law as established by the legislature, not to make it. That the legislature may condition the operation of the law upon the existence of certain facts, and may submit to the courts the determination of those facts, is well established. *Barnes v. Minor*, 80 Neb. 189.

As was said in *Locke's Appeal*, 72 Pa. St. 491, 498: "The legislature cannot delegate its power to make a law, but it

can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

. "The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made." Ranney, J., in *Cincinnati W. & Z. R. Co. v. Clinton County,* 1 Ohio St. 77, 88.

In *In re Incorporation of Village of North Milwaukee,* 93 Wis. 616, a statute authorizing territory of a town containing certain area and population to be incorporated as a town on certain steps being taken, and on certain determinations by the court and subsequent vote of the inhabitants in favor thereof, was declared void as a delegation of legislative power. By the statute in question the court was authorized to determine whether the lands embraced in the petition "ought justly" to be included in the village, and whether the interests of the inhabitants will be promoted by such incorporation, and to enlarge or diminish the boundaries of the proposed village "as justice may require." The question was said to be: "Does the law before us go into operation upon the happening of a certain state of facts to be determined by the circuit court, or does it authorize and require the court to go further, and not only determine facts, but pass its judgment upon questions of legislative discretion?" "Such questions as whether the survey is correct, whether the census is correct, whether the population is as large as the statute requires in proportion to the area, and whether the statutory requirements have been complied with, are all questions of fact; and no reason is perceived why the court may not properly be authorized to inquire into and determine these facts, nor why it may not order an election and appoint inspectors. But the other questions upon which the court is required to pass are of a different nature, and we see no escape from the conclusion

that in passing upon and deciding them the circuit court determines legislative or political questions. These questions are (1) whether the lands embraced in the petition ought justly to be included in the village, and (2) whether the interest of the inhabitants will be promoted by such incorporation. Furthermore, the provision authorizing the court to enlarge or diminish the boundaries of the village as justice may require seems to us equally an exercise of legislative power. It is vigorously claimed by the respondents that these last-named questions are in truth questions of fact only, but it seems to us that this claim is utterly untenable. There is no proper sense in which they can be said to be questions of fact. They are rather ultimate conclusions from all the facts. Given all the facts which the legislature require—the area, the population, the census, the map, the notices—and does the order calling an election follow? By no means. The circuit court, in addition to determining these facts, must then say whether, in its judgment, it is best that there should be a village." "The sum and substance of the law is this: Villages may be incorporated if the circuit court thinks best. This amounts to nothing more nor less than the vesting in the circuit court of the powers of a third house of the legislature, which must be exercised in the affirmative before a village can exist. The legislature has passed the law, the governor has signed it, and it has gone on the statute book, but the circuit judge in every case must add his concurrence before it is operative. The question as to whether incorporation is for the best interest of the community in any case is emphatically a question of public policy and statecraft, not in any sense a judicial question; and in attempting to submit that question to the decision of the circuit court the legislature has undoubtedly done that which the Constitution forbids. If the decision of that question is to be delegated to any officer or body, it must certainly be to the county board of supervisors. That part of the section, also, which places the whole question of the boundaries of the proposed village under the control of the court is equally objectionable."

This language is specifically applicable to the act under consideration. The legislature has provided that certain steps shall be taken and the entire matter submitted to the district court, which is then required to determine whether the proper steps have been taken and the facts necessary to be shown before a corporation may be formed; but, in addition, assuming all matters required by the law exist, the court is still authorized and required to determine (1) "whether or not the district should be incorporated," (2) whether the "boundaries are reasonable and proper for the public convenience and welfare," and (3) "to fix the boundary lines of such district with the end in view of promoting the interest" of such district. These questions are of purely legislative cognizance, and must be determined by the legislature or some body having legislative or administrative powers to which their determination is delegated. As was suggested in the case just cited, if the decision of those questions is to be delegated to any officer or body it must certainly be to the county boards.

In *Dowling v. Lancashire Ins. Co.*, 92 Wis. 63, it was held that a law empowering the insurance commissioner to adopt a printed form, in blank, of a policy of fire insurance, together with such conditions as may be indorsed thereon, which, as near as can be made applicable, shall conform to the type and form of policy adopted by another state, is unconstitutional, as a delegation of legislative power to an executive officer.

In *North v. Board of Education*, 313 Ill. 422, an act was declared unconstitutional which attempted to authorize the circuit court, or judge thereof in vacation, to lay out school districts and determine their boundaries, Thompson, J., saying at page 425:

"Courts may determine what are the corporate limits already established, and they may inquire whether a municipal corporation has been created in accordance with the authority granted by the legislature. The power of the courts to perform these functions implies an existing law applicable to the existing subject, and the inquiry is, what is

the law and has it been violated or obeyed? The inquiry in the instant case, however, is, what territory shall be included in the corporate limits of a municipal corporation? We are unable to perceive how any one can contend that this is a judicial function, to be performed by a court."

In *Funkhouser v. Randolph*, 287 Ill. 94, it was held: "Whether a special drainage district should be organized and what lands should be included in such district for drainage purposes are legislative questions, the determination of which cannot be delegated to a court."

The same general principles have been announced and applied in a number of Nebraska cases. In *Dodge County v. Acom*, 61 Neb. 376, where the authority to establish a drainage ditch was conferred upon the county board, it was said at page 390: "The finding and conclusions of the board, to whom the legislature has given authority to act in the manner prescribed, are final and conclusive as to the necessity of the proposed ditch, and that the public health, convenience or welfare will be promoted thereby, and cannot thereafter be made the subject of a controversy as to whether correct and well founded or not. It is the exercise of a delegated power, political or administrative in character, conferred upon the county board by the sovereign authority of the state acting through its legislative branch of government."

In *Tyson v. Washington County*, 78 Neb. 211, it was held: "Whether a drainage ditch proposed to be constructed * * * will be conducive to the public health, convenience or welfare, or whether the route thereof is practicable, are questions of governmental or administrative policy, and are not of judicial cognizance, and jurisdiction over them by appeal or otherwise cannot be conferred upon the courts by statute."

In *Winkler v. Hastings*, 85 Neb. 212, it was held: "Where legislative power to detach territory from a city has been delegated by statute to the mayor and council, an appeal from the action of that body in refusing to disconnect par-

ticular tracts cannot be made the means of transferring such power to the district court."

In *Elliott v. Wille*, 112 Neb. 86, it was held: "The legislature may not delegate to private individuals either legislative or judicial functions." And at page 89, it was said: "The fixing of boundaries of a political subdivision of a state into counties or districts for public purposes is a legislative function. The legislature may authorize the organization of districts for public purposes by other governmental bodies, and the proceeding may be proposed or initiated by private individuals. Where the latter course is pursued, there must be some provision for determining whether the particular district is for the public health, convenience or welfare, and a means by which an aggrieved property owner, whose property is injuriously affected, may have his rights judicially determined. The legislature may not delegate to private individuals either legislative or judicial functions."

The decisions in the following cases do not militate, against our conclusions herein. The case of *City of Wahoo v. Dickinson*, 23 Neb. 426, involved a statute authorizing the city council to adopt a resolution to annex to said city certain contiguous territory, and thereupon the city filed a petition in the district court of the county praying for the annexation of such territory, setting forth the facts regarding the same. Upon objection being made that the power conferred on the district court was legislative, and not judicial, it was held: "That as a condition of such annexation the court was required to find the allegations of the petition to be true, and that such territory or a part thereof would receive material benefit from its annexation to such city, or that justice and equity required such annexation, and to enter a decree accordingly. The questions, therefore, are so far of a judicial character that the courts may be invested with jurisdiction to determine them." And the court said: "We do not understand the statute, however, as clothing the courts with the power to legislate in the premises—that is, to determine in the first instance what

territory should be annexed. This power is bestowed upon the city council."

*Barnes v. Minor*, 80 Neb. 189, involved the organization of a drainage district by petition filed with the clerk of the district court of the county, and the contention was made that the act was unconstitutional because attempting to confer upon the district court duties and powers not judicial in their character, citing *Dodge County v. Acom*, and *Tyson v. Washington County, supra.* These cases were distinguished on the ground that the power to determine the question whether the proposed drainage improvement would be conducive to the public health and welfare was conferred upon the county board, and upheld the act for the reason that the questions submitted to the court were as to the existence of those facts which the legislature had determined as essential to the right to form such district. The decision is in line with those cases holding that, while authority may not be delegated to the courts to decide what facts shall exist in order that the law may become operative, that when the facts are determined by the legislature, the court may be authorized to inquire whether or not such facts exist and render judgment accordingly.

*Bisenius v. City of Randolph*, 82 Neb. 520, involved a statute authorizing the district court upon petition to disconnect territory from a municipal corporation, and the act was upheld because "The legislature dictates the facts upon which the change shall be made; and the court adjudges whether those facts exist in the particular case."

In the following cases powers similar to those sought to be conferred upon the court by the act in question were delegated to the county board. *State v. Dimond*, 44 Neb. 154; *Dodge County v. Acom*, 61 Neb. 376; *City of Wahoo v. Dickinson*, 23 Neb. 426; *Tyson v. Washington County*, 78 Neb. 211.

From an examination of the above and many other cases the following propositions seem well established:

The facts upon which the operation of the law is to depend must be declared by the legislature; to authorize the

court to determine what facts should form the basis for the operation of the law is nothing more than to require them to legislate upon the question as to what the law should be upon a certain state of facts. Neither by section 4, nor by any other section of the act, are the facts upon the existence of which the law is to become operative stated therein, but the entire question of the boundaries of the district and whether the formation of the corporation will be for the public convenience and welfare is submitted to the discretion of the court without any guidance from the legislature. The act provides that a petition shall be filed signed by 25 per cent. of electors of which 15 per cent. shall be freeholders, with plats suggesting the boundaries of the district, and proposing the members of the board. It does not require the court, upon compliance with these conditions, to declare the district a corporation, but leaves that question to the discretion of the court, exercised in accordance with its view upon the four political and legislative questions above enumerated. The fact that the court is required to submit the question to the final arbitrament of the electorate will not save the act, for the legislature is equally powerless to delegate its power to any individual or group of individuals. *Elliott v. Wille*, 112 Neb. 86. Questions of public health, convenience and welfare, as a basis for the enactment of a law or the formation of a public corporation, are in the first instance exclusively for the determination of the legislature, and may not be delegated to another department of government. After the enactment of a law, it is proper for the courts to enter upon those questions for the purpose of determining the existence of some reason which the legislature might logically accept as a basis for the enactment, all presumptions being in favor of its validity. In the present act no good reason is apparent why the duties thereby imposed, if it could lawfully be done, should be placed upon the courts.

By chapter 89, Laws 1925, a curative or validating act was passed attempting to correct the deficiencies of sections 7147 to 7154, Comp. St. 1922, as amended, by conferring au-

thority upon the board of county commissioners to deter-. mine the propriety of the incorporation of electric light, heat and power districts as consonant with public conve- nience and welfare. We have no doubt of the propriety of such a delegation of power to an official board constituting the legislative body of the county, but the act was declared invalid because it attempted, by reference only, to incor- porate therein the provisions of the prior act, which had been held unconstitutional, as above stated. *Swanson v. Dolezal,* 114 Neb. 540. It is at least unfortunate that the provisions of the act of 1925, just referred to, were not in- serted in the act of 1927 in substitution for sections 3 and 4, in which event the objection now urged would have been of no avail. The court might then have been authorized to determine whether the facts required by the legislature as a basis for the formation of the district existed, and whether the law had been complied with, which are proper subjects of judicial inquiry. As the statute now stands, the court is required to determine what facts shall exist as a basis for the organization of the district, a purely legislative function and must be held invalid as an attempt to impose upon the courts the performance of nonjudicial duties, and an un- authorized delegation of legislative power.

It follows that the judgment of the district court is re- versed and cause remanded, with instructions to enter a decree for plaintiff as prayed.

REVERSED.

Note—See Constitutional Law, 12 C. J. 810 n. 4, 853 n. 15, 854 n. 20, 22, 855 n. 47, 857 n. 93.