ALEXANDER LAVERTY, APPELLANT, V. ROBERT L. COCHRAN ET AL., APPELLEES.

271 N. W. 354

FILED JANUARY 30, 1936. No. 30029.

*Peterson & Devoe,* for appellant.

*John J. Ledwith* and *Ginsburg & Ginsburg, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

DAY, J.

In 1935 the legislature enacted what is commonly known. as the state bonding act (Laws 1935, ch. 23) for the purpose of bonding public officials and employees of the state and its subdivisions. The validity of this act is challenged by a taxpayer of Lancaster county in this suit to enjoin the proper state officials from putting its provisions into operation. Although the trial court held that certain pro-

visions contravened constitutional provisions, it also held that they were separable and did not constitute an inducement to the passage of the remainder of the act. It sustained most of the provisions of the law. From this judgment, the plaintiff appeals.

The trial court properly determined that section 12 of the act (Comp. St. Supp. 1935, sec. 12-213), in so far as it undertook to vest the governor of the state with power to remove or suspend constitutional state officers without trial, was unconstitutional for the reason that it attempts to delegate judicial power to the governor of the state. A brief consideration of the fundamental and basic law of the state confirms this judgment. Section 1, art. II of the Constitution, states:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others except as hereinafter expressly directed or permitted."

This section, common to the state Constitutions of the United States, has an historical background. Governments without this division of powers had been generally oppressive. The political philosophy of Montesquieu in his Spirit of Laws probably influenced early framers of American Constitutions. "There is no liberty," he wrote, "if the power of judging be not separated from the legislative and executive powers. Were it joined with the legislature, the life and liberty of the subject would be exposed to arbitrary control; for the judge would then be the legislator. Were it joined to the executive power, the judge might behave with all the violence of an oppressor."

Nebraska's Constitution contains an absolute prohibition upon the exercise of the executive, legislative and judicial powers by the same person or the same group of persons. It has remained a part of the Constitution unchanged since 1875. It is more certain and positive than the provisions of the federal Constitution and those of some of

the states, which merely definitely divided the three powers of government.

Not only does the foregoing constitutional provision require the separation, but another section, section 1, art. V of the Constitution, places the judicial power in the courts:

"The judicial power of the state shall be vested in a supreme court, district courts, county courts, justices of the peace, and such other courts inferior to the supreme court as may be created by law; but other courts may be substituted by law for justices of the peace within such districts, and with such additional civil and criminal jurisdiction as may be provided by law."

The question presented here is of vital importance and challenges our serious consideration. There is, of course, a very strong presumption that a legislative act is valid. There is also a strong inclination of a court not to criticize or interfere with the acts of another department. However, the Constitution is still recognized as the supreme law of the state and as a limitation of power of all departments and all officials. At present, it is the recognized function of the court to trace the line which marks the limits of power. Otherwise, there would be a conflict and overlapping of the various powers of government. This question frequently has been before the court. It is the law of this state that the legislature may not impose either upon the executive or the judiciary duties which do not properly belong to it. *Searle v. Yensen,* 118 Neb. 835, 226 N. W. 464. See, also, *In re Opinion of Justices* (1935) 87 N. H. 492; *Fugate v. Weston,* 156 Va. 107, 157 S. E. 736; *State v. Taylor,* 27 N. Dak. 77, 145 N. W. 425. As applicable to the case at bar, the rule is that the legislature may not impose judicial power upon the executive officers or delegate to them legislative power.

It has been stated that the phrase "judicial power" is not capable of precise definition applicable to all cases and all circumstances. 34 C. J. 1183. An examination of the cases demonstrates the difficulty of judicial definition. A sufficient definition for the purposes of this case is that

generally judicial power is the authority to hear and determine a controversy as to rights and upon such determination to render a judgment binding upon the disputants. *Horbach v. Tyrrell*, 48 Neb. 514, 67 N. W. 485; *State v. Blaisdell*, 22 N. Dak. 86, 132 N. W. 769.

The judicial power which this act seeks to confer upon administrative officers is mentioned in sections 12-213 and 12-214, Comp. St. Supp. 1935. Section 12-213 provides that the board may bring an action against a bonded official where it "shall be of the opinion that the interests of the state bonding fund are jeopardized by the misconduct or inefficiency of any public employee. * * * During the pending of such proceedings, such public employee may by the governor be suspended from performing the duties of his office."

Section 12-214 provides: "The board may after due investigation at any time, if in its judgment the interests of the state bonding fund require such action, cancel the liability of the bonding fund for the acts of any public employee, to take effect thirty days after written notice of such cancelation. In such case the official whose insurance is canceled shall be deemed temporarily suspended, as provided in the preceding section, until such time, if any, as the order of cancelation shall be rescinded by the board, or by order of court as hereinafter provided."

The authority to hear and determine controversies between public officers, the state, counties, cities and other municipal corporations, subdivisions of the state and the state bonding fund is a judicial power.

The administrative board of the state bonding fund is the board of educational lands and funds, composed of the governor, the treasurer, the secretary of state, the attorney general, and the commissioner of public lands and buildings, all executive officers of the state of Nebraska. Laws 1935, ch. 23, sec. 2.

It is for the board to determine when and how the best interests of the bonding fund are jeopardized by misconduct and inefficiency of a public employee and render its

judgment accordingly, with the power to remove the public official from office and cause the office to be vacant. True, section 12-215, Comp. St. Supp. 1935, provides for an appeal to the courts but does not provide the criterion for reversal, and since the discretion is vested solely in the board as to whether the official misconduct and inefficiency jeopardized the fund, it would seem that a reversal of its judgment would require a finding of the appellate court that there was a clear abuse of discretion on the part of the board. The mere fact that an appeal is provided does not remedy the attempt to delegate judicial power to an administrative board. An inferior court exercises judicial power although there is an appeal from its judgment.

There is, however, a more serious objection to this delegation of judicial power. The act uses the words public employee and public official interchangeably, and each in the act has the same apparent meaning. These terms include the constitutional officers of the state. The record reveals that it was the difficulty in securing a bond for a constitutional officer, the state treasurer, in 1935, which motivated the legislature in the passage of this act. A constitutional officer can only be removed by impeachment as provided in the Constitution. Const. art. III, sec. 17. See *Conroy v. Hallowell*, 94 Neb. 794, 144 N. W. 895. In this cited case it was sought to remove a county judge for a statutory cause. The cause was an additional one to those provided by the Constitution. In this respect it was similar to the case at bar. It was held invalid as transgressing the constitutional limitation on the powers of the legislature. This act proposes the removal of constitutional officers for the reason that the state bonding board is of the opinion that the misconduct or inefficiency of an official jeopardizes the fund.

Another authority discusses the question and states the rule as follows: "The Constitution of a state may, however, place beyond the reach of hostile legislation the method and grounds for removing incumbents of public offices; and where the Constitution prescribes the method of re-

moval and the causes for which public officers may be removed the method and grounds established by this instrument are exclusive and it is beyond the power of the legislature to remove them for any other cause or in any other manner." 22 R. C. L. 561, sec. 265.

In *Commonwealth v. Williams* (1880) 79 Ky. 42, it was held: "The Constitution has designated the offenses for which certain public officers, including county judges, may be removed from office, and the legislature has no power to prescribe removal from office as a penalty for offenses not so designated." In this case the legislature had attempted to provide an additional ground for removing a constitutional officer to those prescribed by the Constitution and attempted to define it as misfeasance in office, which was a constitutional ground of removal. This followed an earlier case, *Lowe v. Commonwealth* (1860) 3 Met. (Ky.) 237, wherein it was said: "Wherever the Constitution has created an office and fixed its terms, and has also declared upon what grounds and in what mode an incumbent of such office may be removed before the expiration of his term, it is beyond the power of the legislature to remove such officer or *suspend* him from office for any other reason or in any other *mode* than the Constitution itself has furnished." In another case it is stated that, where the Constitution provides the method of removing an officer from his office, such method is exclusive. *State v. Gravolet*, 168 La. 648, 123 So. 111. Where the office is especially provided for by the Constitution itself, the constitutional provision for removal must control. In *Georges Township School Directors*, 133 Atl. 223 (286 Pa. St. 129) it is held: "The constitutional method of removal of officers prescribed by Const. art. 6, sec. 4, must be resorted to, where applicable, for it is exclusive and prohibitory of any other mode which the legislature may deem better or more convenient."

Let us now examine the provisions of the law under consideration. Section 4, ch. 23, Laws 1935, provides: "Failure to report and remit premium to the board shall

automatically create a vacancy in the office of such public employee; and such vacancy shall be filled in the manner provided by law." Section 13, ch. 23, Laws 1935, provides: "The board may * * * if in its judgment the interests of the state bonding fund require such action, cancel the liability of the bonding fund for the acts of any public employee. * * * In such case the official whose insurance is canceled shall be deemed temporarily suspended."

Other sections provide for the removal or suspension of constitutional officers upon the judgment of the state bonding board. It is beyond the power of the legislature to provide for the removal or suspension of a constitutional officer where the Constitution creates the office, fixes its terms, and the grounds and manner of removal.

The trial judge reached substantially the same conclusion as this court upon the questions heretofore discussed. However, the district court held that the provisions were separable, and that these provisions were not an inducement to the passage of the act. The severability of the provisions and the effect as an inducement to the passage of the act will be discussed later in this opinion.

In the meantime, let us consider the constitutional requirement that constitutional executive state officers give a bond. Section 26, art. IV of the Constitution, provides: "The officers mentioned in this article (relating to executive state officers) shall give bond in not less than double the amount of money that may come into their hands, and in no case less than the sum of fifty thousand dollars, with such provisions as to sureties and the approval thereof, and for the increase of the penalty of such bonds as may be prescribed by law." Bonds are commonly required of public officers conditioned upon the faithful performance of the duties of their offices. The duties are prescribed by law, and the obligation of the bond is thus fixed. The bond required of public officers by the Constitution may be defined as a contractual obligation that such officer will faithfully discharge the duties of his office. Const. art. IV, sec. 26. An official bond is an obligation to pay upon a breach

of the conditions thereof. Sureties on official bonds are liable for acts done by their principal by virtue of his office. *State v. Porter*, 69 Neb. 203, 95 N. W. 769. The very nature of an official bond implies an absolute obligation to pay upon the occurrence of certain conditions, such as a breach of duty of said official. Who, then, is the obligor on the bonds provided for under the state bonding act? The state is, of course, the obligee, but even if it could also be denominated the obligor, the very provisions of the act negative such an assumption. The act provides (Comp. St. Supp. 1935, sec. 12-202) that a claim under the proposed bond shall never be construed as an obligation of the state and that no tax shall ever be levied for the payment thereof. Even if the legislature had attempted to require the state to pay the losses on the official bonds, it would encounter legal difficulties.

The Constitution requires all constitutional state officers to give a bond for the faithful performance of official duties, and the legislature is without power to nullify this plain mandatory provision of the Constitution. If the state were to pay the losses, the practical effect would be to abolish bonds to indemnify the state for losses caused by a failure of state officials to faithfully perform their duties.

On the other hand, if the legislature substitutes for a bond, with an obligor who is required to pay, one without such an obligor, dependent solely for payment from funds when and if collected as premiums for such bonds, it likewise nullifies the constitutional provision. The fund starts insolvent, and one of the first obligations imposed upon it was that of the state treasurer for a million dollars. In fact, that bond created the emergency which caused the legislature to pass the bill in what is termed the furtherance of a public purpose. It seems to be elementary that a bond without an obligor is not such a bond as required by the Constitution for constitutional executive state officers.

But there is a severance clause, section 12-224, Comp. St. Supp. 1935, which provides: "Should any section or

provision of this act be decided by the courts to be unconstitutional or invalid, the same shall not affect the validity of the act as a whole or any part thereof, other than the part so decided to be unconstitutional." The rule is that, although a statute may be invalid or unconstitutional in part, the other parts will be sustained where they can be separated from the part which is void. *Muldoon v. Levi*, 25 Neb. 457, 41 N. W. 280. But the parts of the statute which are valid must be capable of being executed independently of the invalid parts in order to be operative. *State v. Ure*, 91 Neb. 31, 135 N. W. 224. The statutory provision expressing legislative intent as to the separability of the various parts of a statute is merely an aid to judicial interpretation. *Hubbell Bank v. Bryan*, 124 Neb. 51, 245 N. W. 20.

Where sections constituting an inducement for the passage of an act are unconstitutional, the entire act must fall, notwithstanding the saving clause. *Moeller, McPherrin & Judd v. Smith*, 127 Neb. 424, 255 N. W. 551; *State v. Price*, 129 Neb. 433, 261 N. W. 894.

Considered in connection with the history of its enactment as disclosed by the record in this case, an unquestioned inducement to the passage of the act was to secure a bond for the state treasurer for a million dollars. In 1935 the state treasury was closed for about 22 days because the treasurer elect could not procure a bond under the then prevailing statutory conditions. It is alleged in the pleading, evidenced by the testimony, and argued both orally and in the briefs filed in this court that an emergency confronted the state in the matter of the state treasurer, and in furtherance of a public purpose this act was passed to the end that the activities of the state might continue. The provision for the bonding of the state treasurer under such conditions was not only an inducement but was the principal inducement for the passage of the act. The state treasurer is a constitutional state officer required by the Constitution to give a bond. Since the provisions are invalid which relate to the treasurer's bond and other con-

stitutional executive officers, and that provision was the inducement for the passage of the act, the entire act must fall.

But there are additional invalid provisions which were an inducement to the passage of the act. The provisions relating to the removal from office by the board of constitutional officers were held invalid by the trial court. They are clearly so. But these provisions were an integral part of the plan of bonding public officials. The bonding fund was safeguarded from loss by these provisions. The act provided for a bond cancelable whenever the board was of the opinion that the fund was jeopardized by the official acts of an officer. A cancelation of the bond removed the officer from his office. In the case of constitutional officers, this was violative of the provisions of the Constitution. The bonds of officials written by private sureties are not cancelable. The rest of the act was dependent upon these provisions for a workable plan. These provisions were integral parts of the entire scheme. The legislative plan was to provide a cancelable bond. To invalidate these provisions and let the rest stand would thereby create an uncancelable bond. Clearly, the legislature had no such intention, and these provisions were an inducement to the passage of the act.

Where the connection between the invalid parts and the other parts of a statute is such as to warrant the belief that the legislature would not have passed the act without the invalid parts, the whole act must be held inoperative. *Smith v. Thompson,* 219 Ia. 888, 258 N. W. 190; *State v. Henry,* 218 Wis. 302, 260 N. W. 486; *Searle v. Yensen,* 118 Neb. 835, 226 N. W. 464.

We are constrained to hold that the state bonding act was a scheme of legislation to accomplish a particular purpose, and when said purpose fails on account of invalid provisions, the entire act is unconstitutional.

It is definitely stated that other sections of the act which have been assailed are not judicially determined hereby to be valid. Sufficient provisions have been discussed to

demonstrate that the act is invalid because it contravenes constitutional provisions. But this is not to be understood to be the only respects in which the act may violate constitutional provisions. It is, however, sufficient for a proper decision of this case. A court is neither required nor permitted to do more.

However, this opinion would not be complete without a reference to the two statutes establishing a state bonding fund in North Dakota. Our attention has been directed to them and the decisions of the supreme court of that state thereunder.

The first state bonding act was passed by that state in 1913, Laws 1913, ch. 194. This act was invalidated by the supreme court of that state in *State v. Taylor,* 27 N. Dak. 77, 145 N. W. 425, decided December 29, 1913. Two years later, the legislature passed another bill providing for a state bonding fund, Laws 1915, ch. 62. This latter act was upheld by the court in *State v. Taylor,* 33 N. Dak. 76, 156 N. W. 561, decided February 5, 1916. It has been frequently asserted that the act under consideration here was similar to that of North Dakota. A casual examination reveals that there is little similarity between the acts. The last act of North Dakota had for its purpose the creation of a state bonding fund in the office of the commissioner of insurance, whose duty it was made to issue official bonds for all county, city, town, village, school district and township officials required by law to furnish official bonds. It did not undertake to bond state officials, including the extremely large bond of the state treasurer. It did not authorize any bond for more than $50,000. An avowed purpose of the Nebraska act was to assume liability on the bond of the state treasurer for a million dollars. It is further noted that the North Dakota act fixes the premium rate, sets out in detail the form of the bond to be issued, and provides that the officials may procure a bond elsewhere, if they desire. The bond is not cancelable, and the insurance commissioner cannot remove an officer from his office. It also provides that the commissioner may employ additional

clerical help and incur incidental office· expenses made necessary by the additional work caused by the act, not to exceed $1,500 to be reserved for the purpose from the premiums paid. On the other hand, the Nebraska act appropriates $100,000 for expenses, to be repaid from the fund, and places no limit on the amount the board may spend from the premiums for expenses of administration. It specifically provides for a secretary at an annual salary of $3,000 and an attorney at an annual salary of $3,600. The Nebraska act does not set out the form of the bond, fix the premiums, or regulate the part of the premiums which may be spent for expenses. This comparison refers to a number of things which the appellant asserts invalidate the act which are not discussed or decided by the court for the reason that a discussion of these issues is unnecessary to a decision of this case. Questions presented on appeal but not necessary to a decision need not be determined. *Goergen v. Department of Public Works,* 123 Neb. 648, 243 N. W. 886. The sole purpose of the comparison was to demonstrate that there is such a difference between the state bonding act of North Dakota and that of Nebraska that the decision of the court of our sister state is scarcely applicable as an authority in the solution of our problem. It has not been called to our attention that any other state has entered the field of bonding public officials.

It is, therefore, the conclusion of this court that the trial court correctly held that the provisions conferring upon the board of the state bonding fund and the governor the power to remove constitutional officers are contrary to the fundamental law. But we conclude that the invalid provisions are not separable so that the remainder of the act can stand as a complete act, and that such invalid provisions were an inducement to the passage of the entire act. In this last particular, the judgment of the trial court cannot be followed.

REVERSED.