The CITY OF CARRINGTON, a municipal corporation, Petitioner and Appellant,

v.

FOSTER COUNTY, North Dakota, a municipal corporation; and Carrington Township, North Dakota, a municipal corporation; and any qualified voter or freeholder in the territory proposed to be annexed or any adjoining municipal corporation, Respondents (three cases).

Nos. 8524–8526.

Supreme Court of North Dakota.

March 6, 1969.

**378**

Fabian E. Noack, Carrington, for appellant.

Mattson, Williams & Hovey, New Rockford, for respondent.

Solberg, Anderson & Stewart, Fargo, for City of Fargo, as amicus curiae.

Zuger, Bucklin, Kelsch & Zuger, Bismarck, for North Dakota League of Cities, as amicus curiae.

ERICKSTAD, Judge (on reassignment).

House Bill 722, introduced in the 1967 session of the state legislature, provided for the annexation and exclusion of unincorporated areas by municipal corporations and repealed N.D.C.C. ch. 40–51. On its passage it was designated ch. 338 of the 1967 session laws and was placed in the code as N.D.C.C. ch. 40–51.1.

Acting pursuant to the provisions of § 40–51.1–06 the City of Carrington adopted separate resolutions to annex three parcels of land adjacent to the city.

That section reads:

40–51.1–06. Annexation by resolution of municipal corporation.—The governing body of any municipality may adopt a resolution to annex adjacent territory as follows:

1. The city governing board shall adopt a resolution describing the property adjacent to the city to be annexed; and

2. Shall publish said resolution once a week for two successive weeks in the official newspaper of the city; and

3. In the absence of protests filed by more than one-fourth of the property owners as of the date of the adoption of the resolution by number within the area proposed to be annexed, the territory described in the resolution shall be included within and shall become a part of the city, and a copy of the resolution with an accurate map of the annexed area, certified by the execu-

tive officer of the municipality, shall be filed and recorded with the county register of deeds.

If one-fourth or more property owners protest, the city may seek annexation by petition to the district court as hereinafter provided.

North Dakota Century Code.

Following the adoption of the resolutions annexing the various tracts of property and the publication of the resolutions, protests were filed by one-fourth or more of the property owners in each of the areas sought to be annexed. In each instance the City then sought annexation by petition to the district court pursuant to the provisions of §§ 40–51.1–07 and 40–51.1–08, which read:

40–51.1–07. Annexation by petition of municipal corporation.—The governing body of any municipal corporation may petition the district court of the county in which any territory adjacent to it lies for its annexation. The petition shall set forth an accurate map of the area sought to be annexed, its description, and the reasons for its annexation.

40–51.1–08. Notice—Petition of municipal corporation.—In any annexation proceedings instituted by its petition in court the municipal corporation shall give notice to the chairman of the governing body of the county and township if organized wherein such territory lies, that it will on a given day not less than thirty days thereafter, move the district court of the county wherein such territory lies or the judges designated to hear the case, to grant the annexation requested in its petition, with which notice shall be served a copy of its petition. A copy of the notice shall be published at least once a week for two successive weeks in the official newspaper published in such municipal corporation and when there is no newspaper published therein, then in the official newspaper of the county. The notice shall be returned after service to the clerk of the district court and when the publication is complete, with proof of publication, the case shall be docketed for hearing.

North Dakota Century Code.

After due notice was given pursuant to § 40–51.1–08 a three-judge district court was convened in the Foster County Courthouse on November 13, 1968, pursuant to § 40–51.1–10. Before proceeding with the hearing the court on its own motion raised the question of its jurisdiction to act. Following a recess during which counsel for the respective parties were invited to research this question, the respondents moved that the petitions be dismissed on the ground that §§ 40–51.1–11 and 40–51.1–12 were unconstitutional as delegations of nonjudicial and legislative duties to the court. The court granted the motion as to each of the petitions, and it is from the order granting the motion for the dismissal of all three petitions that the City now appeals.

Although the trial court referred to other authority, it relied principally for its position on Glaspell v. City of Jamestown, 11 N.D. 86, 88 N.W. 1023 (1902).

In *Glaspell* the petitioners sought to exclude certain property from the city of Jamestown. Under the statutes then existing, the district court, when properly petitioned, was required to determine whether the petition should be granted. The pertinent section read:

§ 2441. Duty of Court. If upon the hearing the court shall find that the request of the petitioners ought to be granted and can be so granted without injustice to the inhabitants or persons interested the court shall so order. If the court shall find against the petitioners the petition shall be dismissed at the cost of the petitioners.

Revised Codes of North Dakota 1899.

In finding that section and other related sections unconstitutional because they vest-

ed legislative powers in the courts, this court said:

In this case the decision must turn upon the question whether the duty devolving upon the court, of determining whether such territory ought to be excluded from the corporate limits, and whether the petition can be granted without injustice to the interested parties, be a judicial or a legislative power. If a decision of the matter prayed for in the petition involved decisions of questions of fact only, then the power conferred upon the court would be judicial. The facts to be found relate to the character of the land; its location, occupancy, ownership; benefits accruing by being within the corporate limits; burdens upon it by reason of city taxation; the presentation of a petition to the city council; the refusal of the city to grant it; publication and service of notices; and whether the proceedings were in all things regular. Passing upon these questions and making findings of fact thereon would involve the exercise of judicial power. Having made such findings, the duty of the court, as prescribed by the law, is not fully performed in relation to the matter. The court must proceed further, and determine whether the petition "ought to be granted and can be granted without injustice" to the interested parties. It is apparent that such a determination goes further than the mere finding of a fact. It involves the reaching of a conclusion from the facts found as to the policy of restricting the corporate limits of the city,—not only the policy for the present, but for the future. It determines the limits of the city; the jurisdictional limits of its courts, and taxation powers; the effect upon its schools and people; and, in short, determines the same identical questions of public policy involved always in the exercise of legislative duties or powers. When exercised as to the organization of cities, it determines whether the charter shall be amended in the matter of boundaries; it determines whether the boundaries of the city shall be changed,—something that can be done in no other way, under present laws, than by the passage of an ordinance. This seems to us to involve the exercise of what is clearly legislative discretion. It is more than the finding of facts. It necessarily compels the finding of conclusions,—not conclusions as to the law applicable, but conclusions as to the wisdom or policy of the relief sought. Whether such action is expedient is necessarily involved. Such duty requires to be done more than is included in the ordinary and accepted meaning of a judicial act,—a determination of what the existing law is in relation to some existing thing already done or happened. It falls within the definition of legislative action, viz., a predetermination of what the law shall be, for the regulation of all future cases falling under its provisions. * * *

Glaspell v. City of Jamestown, *supra*, 88 N.W. 1025.

The City asserts that although duties purely legislative in character may not be imposed upon the courts, duties quasi-judicial in character may be imposed upon them. In support of this view they refer us to Kermott v. Bagley, 19 N.D. 345, 124 N.W. 397 (1910), rendered by this court eight years after *Glaspell*.

In *Kermott* the statute under consideration was ch. 183 of the 1909 session laws, which imposed upon judges of the district court the duty of determining whether statements contained in pharmacists' applications for licenses to sell intoxicating liquors and wines were true and, if so, the duty of granting permits.

In upholding this statute against the attack that it must fail because it imposed upon the district courts nonjudicial duties, the court decided that the duties imposed were purely administrative and therefore quasi-judicial in nature and thus properly to be imposed on the district courts.

The court referred to § 96 of our constitution and said: "It is a very significant fact that no like provision is found with reference to the imposition of nonjudicial duties upon other courts or the judges thereof." Kermott v. Bagley, *supra,* 124 N.W. 398.

The pertinent part of § 96 reads:

No duties shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial * * *.

North Dakota Constitution.

Let us compare the pertinent parts of the statutes, commencing with the statutes in *Kermott:*

§ 9354. Druggist's permit, how obtained.] * * * In order to obtain a druggist permit under this act, the applicant shall file in the office of the clerk of the district court of the county wherein he is doing business * * * a petition signed by the applicant. All petitions shall set forth:

1. The town, village, city or township, and particular place therein wherein such business is located, and that the applicant is a person of good moral character, and does not use intoxicating liquors as a beverage, and can be entrusted with the responsibility of selling the same.

2. That said applicant is a pharmacist as aforesaid, and is lawfully and in good faith engaged personally in the business of a druggist, as the proprietor thereof, at the place designated in the petition, and well versed in the profession.

3. That said applicant has, in his said business, exclusive of intoxicating liquors and fixtures, a stock of drugs and druggist's sundries, if in any city, of the value of at least two thousand dollars, and if elsewhere of the value of at least fifteen hundred dollars; provided that permits may be granted to any pharmacist possessing all the qualifications herein set forth who owns in his own right in any partnership, association or corporation, if in a city, an amount of interest or capital stock of at least two thousand dollars and if elsewhere of the value of at least fifteen hundred dollars and who is the manager and in actual personal charge of the business of such partnership or corporation at the place of its retail business, and who in addition to his responsibility as a partner or stockholder, shall become personally and individually responsible for all sales in the same manner and to the same extent that he would if he owned said business in person, and; provided, that such applicant must have been engaged in business as a druggist at the place designated in said petition for a period of at least six months next preceding the making of the application for such permit, and; provided, that only one permit shall be granted or issued to the same person. * * *

§ 9355. Hearing. Application to be published.] * * * If satisfied that the statements in such petition are true, the district judge may in his discretion grant a permit to the applicant to sell intoxicating liquors for medical, mechanical, scientific, and wine for sacramental purposes only; * * *

Laws of North Dakota 1909, ch. 183, §§ 1, 2, at 266–268.

The pertinent parts of the statutes under consideration in the instant case follow:

40–51.1–11. Hearing and decision— Petition by municipal corporation.—1. The court shall hear the case upon the evidence introduced. The court may admit and consider all studies, surveys, maps, and data that is material to the area prepared or obtained by any official state or local subdivision planning or zoning commissions in the performance of their functions.

2. The court shall determine if the annexation should be granted consider-

ing the present and future uses and development of the area sought to be annexed and its relationship to the municipal corporation seeking annexation, the governmental services available and needed and the ability to furnish them, and the relationship of the area sought to be annexed economically, physically and socially with the purpose of promoting the health, safety, and general welfare of the inhabitants of the area, the municipal corporation and other school districts and political subdivisions affected thereby. * * *

\*    \*    \*    \*    \*    \*

40–51.1–12. Powers of court—Decision—Terms—Petition by municipal corporation.—The court in making its decision, shall balance the equities in the case and shall enter an order setting forth what it deems fair and reasonable terms and conditions and shall direct the annexation in conformity therewith. It shall have power:

1. To determine the metes and bounds of the territory to be annexed and may include the same area or a smaller area than that described in the petition. The court shall so draw the lines of annexation as to have a reasonably compact body of land and so that no land shall be taken into the city which is not adapted to improvements or which the city will not need in the reasonably near future for development unless necessarily embraced in such compact body of land;

\*    \*    \*    \*    \*    \*

North Dakota Century Code.

The 1909 statutes imposed upon the court primarily the duty of fact finding, whereas the 1967 statutes imposed upon it not only the duty of fact finding but, in requiring it to determine whether the petition should be granted, a policy decision requiring discretion. It is our judgment that the reasoning of *Kermott* should be permitted no further expansion, for that would subvert the objective of the division of governmental powers.

■ The court in *Kermott* recognized that irrespective of the fact that a constitution does not contain a general distributing clause expressly providing for the division of governmental powers among the legislative, executive, and judicial branches of government (and ours does not contain such a clause), the creation of those branches of government operates as an apportionment of the different classes of power. As all of the branches derive their authority from the same constitution, there is an implied exclusion of each branch from the exercise of the functions of the others.

Had our constitution not contained § 96, which specifically prohibited the imposition upon the Supreme Court or any of its judges of duties other than judicial, this court in *Kermott* might well have concluded that the fact that the constitution provided for the three separate branches of government was a prohibition of the imposition of other than judicial duties upon the district courts, they being a part of the judicial branch as established by our constitution.

We think the court placed too much importance upon the fact that the framers of our state constitution expressly prohibited the imposition of nonjudicial functions or duties upon the Supreme Court and its judges while keeping silent on that issue as to the district courts.

An annotation contained in American Law Review in the year 1930 is pertinent:

It may be stated as a general rule, supported by practically all of the cases in which the proposition is considered, that the creation, enlargement, or diminution of political districts or municipal corporations is a legislative function, and that a statute which delegates the performance of this function to the judiciary, and leaves to the discretion of that

body the determination of the circumstances which will justify the creation of a district or corporation, or the circumstances which will justify an enlargement or diminution of such a political subdivision, violates the constitutional provision separating the powers of the government into legislative, executive, and judicial departments.

But upon the question as to what constitutes a delegation of legislative power to the judiciary, the courts are not in accord.

A majority of the cases would seem to favor the rule that a statute providing for the creation or change of a political district or municipal corporation, which grants to a court the exercise of any discretion as to whether the political subdivision should be created or changed, or requires of the court any other assistance than to determine whether the conditions precedent as declared in the statute have been complied with by the organizers of the district or corporation, or the district or corporation seeking a change, violates the constitutional limitation separating the powers of the government. * * *

Annot., 69 A.L.R. 266, 267–268 (1930).

■ It is our opinion that the majority rule is not only the better rule but that it expresses the intent of the framers of our state constitution. When § 20 (later designated as § 19) was being considered in the Committee of the Whole of the Constitutional Convention, Delegate Purcell pointed out that it would conflict with § 12. Section 20 read:

The Judges of the Supreme Court shall give their opinion upon important questions of law and upon solemn occasions, when required by the Governor, the Senate or the House of Representatives; and all such opinions shall be published with the reported decisions of said court.

Proceedings and Debates of the First Constitutional Convention of North Dakota, at 228 (1889) [hereinafter cited as Debates].

Section 12, as then being considered, was equivalent to our Section 96. It read:

No duty shall be imposed by law upon the Supreme Court or any of the judges thereof, except such as are judicial, nor shall any of the judges thereof exercise any power of appointment except as herein provided.

Debates, at 229.

Speaking in opposition to § 20 and thus indirectly in support of § 12, Delegate Carland had this to say:

It is an injustice that a man's rights may be determined in advance at an *ex parte* hearing, and the argument that they will not be asked except on solemn occasions for their opinions has nothing to it, for the Legislature is the judge as to whether it is a solemn occasion or not. The value of the Supreme Court as I understand it, depends on two things—first the ability of the judge or judges that compose the Court, and second the ability with which the case is argued. The opinion of the judge is not worth more than that of any other lawyer of like standing and ability. His opinion as a judge after he has heard the case argued on both sides, and had a chance to examine it is what gives force to the opinion. I sincerely hope that no such provision will be engrafted into the Constitution requiring the Supreme Court to perform anything but judicial duties. Section twelve was drawn to prevent this thing, for no man desires to have his rights decided in advance by an *ex parte* opinion of the Supreme Court, however learned and respectable, without argument.

Debates, at 232–233.

We find nothing in the proceedings of the convention which would indicate that the delegates intended that anything other

than judicial duties should be performed by the district courts. It seems that the main concern in adopting what ultimately became § 96 was in seeing to it that neither the Supreme Court nor its judges should be asked to render *ex parte* opinions.

We are not unmindful of the oral arguments made in our court and the briefs filed with our court by the North Dakota League of Cities and the City of Fargo as amici curiae. They point out that chapter 40–51.1 was borrowed from the State of Virginia, and that although both the Virginia bill of rights and the Virginia constitution contain specific separation-of-powers provisions, the Virginia statute has been upheld by the Supreme Court of that state as not being in contravention of either. See Henrico County v. City of Richmond, 106 Va. 282, 55 S.E. 683 (1906). We are unable to accept the Virginia court's views.

Our constitutional provisions relevant to this issue, or so much thereof as is pertinent, follow:

Section 25. The legislative power of this state shall be vested in a legislature consisting of a senate and a house of representatives.

Section 85. The judicial power of the state of North Dakota shall be vested in a supreme court, district courts, county courts, justices of the peace, and in such other courts as may be created by law for cities, incorporated towns and villages.

Section 96. No duties shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial, nor shall any of the judges thereof exercise any power of appointment except as herein provided.

Section 103. The district courts shall have original jurisdiction, except as otherwise provided in this constitution, of all causes both at law and equity, and such appellate jurisdiction as may be conferred by law. * * *

Section 130. The legislative assembly shall provide by general law for the organization of municipal corporations restricting their powers as to levying taxes and assessments * * *.

North Dakota Constitution.

■ Not only because our constitution provides for the usual branches of government, but because it contains a specific provision placing the responsibility for the organization of municipal corporations in the legislature, that duty must be performed by the legislature and cannot be imposed upon the judiciary.

Although it may not be our province under any circumstance to judge the wisdom of the framers of our state constitution, we believe that in this instance they had good reason for dividing our government into the traditional three branches and in specifically imposing upon the legislative assembly the responsibility for the organization of municipal corporations.

In this regard we quote a 1929 decision of the Supreme Court of Nebraska, which was determining the validity of a Nebraska statute that imposed upon the district court the duty of ascertaining, after a hearing, whether a power district should be incorporated and what should be the extent of its boundaries.

Although the Nebraska constitution contained a general distributing clause and our constitution does not, we think that what the Nebraska court said about the division of powers is pertinent to this case:

The division of governmental powers into executive, legislative and judicial in this country is a subject familiar, not only to lawyers and students, but is a part of the common knowledge of the citizen. It represents, probably, the most important principle of government declaring and guaranteeing the liberties of the people, and has been so considered, at least, since the famous declaration of

Montesquieu that "there can be no liberty * * * if the power of judging be not separated from the legislative and executive powers. * * * Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would be the legislator: Were it joined to the executive power the judge might behave with all the violence of an oppressor." * * *

The question submitted, therefore, is of supreme importance and requires our most serious consideration, notwithstanding the strongest presumptions of validity to which a legislative act is entitled, and the extreme disinclination on the part of one of such departments to criticise or interfere with the acts of another. * * *

The power of the Legislature to delegate a part of its legislative functions to municipal corporations or other governmental subdivisions, boards, commissions, and tribunals, to be exercised within their respective jurisdictions, cannot be denied; but the recipient of such powers must be members of the same governmental department as that of the grantor. Otherwise a confusion and duplication of powers would result, against which the section of the Constitution above quoted is directed. The Legislature may not impose upon the judiciary or the executive the performance of acts or duties not properly belonging to those departments respectively. * * *

Searle v. Yensen, 118 Neb. 835, 226 N. W. 464, 466, 69 A.L.R. 257 (1929).

■ We conclude that §§ 40–51.1–11 and 40–51.1–12 impose nonjudicial duties upon the district courts, and that in so doing they violate the separation-of-powers principle which is implicit in our state constitution. In addition, placing in the district courts a power specifically reserved to the state legislature by § 130 of our state constitution is an impermissible delegation of legislative power. For these reasons the sections are unconstitutional.

■ Further, it is our view that the legislature intended §§ 40–51.1–11 and 40–51.-1–12 to be integral parts of ch. 40–51.1, and that without those sections the chapter would be worthless except as it might relate to uncontested annexations. Because the sections are so tied together, we hold that the entire chapter fails. We do this especially in light of the fact that the state legislature is presently in session, and a bill may yet be enacted giving complete coverage of this subject rather than piecemeal treatment.

Therefore this case is remanded with instructions to the three-judge district court to modify its order so that the entire chapter 40–51.1 is held to be unconstitutional. In all other respects the order is affirmed.

STRUTZ, PAULSON and KNUDSON, JJ., concur.

TEIGEN, Chief Justice (concurring specially).

I join in the opinion of the majority. However, I wish to add a few words to emphasize another reason why I believe the Act unconstitutional.

The Act provides an appeal may be taken from the decision of the court to the Supreme Court "as in other matters tried to the court and without a jury." Section 40–51.1–14, N.D.C.C. If allowed to stand, the Act imposes upon this Court a legislative function which is clearly unconstitutional. Section 96 of the North Dakota Constitution provides:

"No duties shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial * * *"

I cannot assume the Legislature would have enacted the Act in question without the appeal provision and, therefore, I conclude it is not severable.