WILSON, APPELLANT, v. HOISINGTON, RESPONDENT.

(No. 7,996.)

(Submitted January 8, 1940. Decided January 24, 1940.)

[98 Pac. (2d) 369.]

Mr. *James B. O'Flynn* and Mr. *Ernest M. Child,* for Appellant, submitted a brief; Mr. *O'Flynn* argued the cause orally.

*Messrs. Grubb & Rockwood* and Mr. *Marshall Murray,* for Respondent, submitted a brief; Mr. *Forrest C. Rockwood* and Mr. *Murray* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by contestant from a judgment in favor of contestee. The question involved is whether contestee is qualified to hold the office of county commissioner of Lincoln county. The question arises from the following facts:

Hoisington settled upon a homestead near Troy in Lincoln ▆ county in August, 1917, in what is now County Commissioner District No. 2. He there remained until August 7, 1936, at which time he accepted an appointment as deputy sheriff and went to Libby, which is in County Commissioner District No. 1. During that month he married a resident of California and established a home in Libby, where he continuously maintained his home until the time of the trial of this action.

After the registration lists had been cancelled, pursuant to Chapter 172, Laws of 1937, under the mistaken belief that they were obliged to do so, Hoisington and his wife registered as electors in the Libby precinct on January 3, 1938. Later, and on March 8, 1938, upon learning that they could maintain their voting residence in the Troy district, they cancelled their registration in the Libby district and reregistered in the Troy district.

We must under these facts regard contestee as a qualified elector at all times in the Troy district. When he moved to Libby he intended to remain there only so long as his position of deputy sheriff continued, and he always entertained the intent to return to his home in the Troy district when his employment as deputy sheriff ceased. He frequently returned to his home in the Troy district to help look after his property interests which, during his absence, were cared for by his father who lived on the property.

At the general election on November 8, 1938, he was elected ▆▆▆ commissioner from District No. 2. This proceeding questions his right to hold the office because of the provisions of section 4, Article XVI of our Constitution. That section, in providing for the election of county commissioner, provides that

they "shall be selected from the residents and electors of the district or districts in which the vacancy occurs, * * * provided, however, that no one shall be elected as a member of said board, who has not resided in said district for at least two years next preceding the time when he shall become a candidate for said office."

The question before us is: What is meant by the word "resided" as used in this section? Other sections of the Constitution shed some light upon this question. Section 2 of Article IX provides who are qualified to vote and, among other things, contains this provision: "Second, he shall have resided in this state one year immediately preceding the election at which he offers to vote, and in the town, county or precinct such time as may be prescribed by law." The very next section provides that "for the purpose of *voting* no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the state, or of the United States, nor while engaged in the navigation of the waters of the state, or of the United States, nor while a student at any institution of learning, nor while kept at any almshouse or other asylum at the public expense, nor while confined in any public prison."

Section 7 of the same Article, when dealing with the right to hold office, provides as follows: "No person shall be elected or appointed to any office in this state, civil or military, who is not a citizen of the United States, and who shall not have resided in this state at least one year next before his election or appointment." Section 11 of the same Article provides in part as follows: "Any person qualified to vote at general elections and for state officers in this state, shall be eligible to any office therein except as otherwise provided in this constitution," etc.

The effect of section 11 of Article IX, except as otherwise provided in the Constitution, is to make those qualified to vote for an officer eligible to hold the office. This was so held in the case of *State ex rel. Shea* v. *Cocking,* 66 Mont. 169, 213 Pac. 594, 595, 28 A. L. R. 772, where the following was quoted with approval from Mechem on Public Office and Officers, section 67:

"Where no limitations are prescribed, the right to hold a public office under our political system is an implied attribute of citizenship and is presumed to be coextensive with that of voting at an election held for the purpose of choosing an incumbent for that office; those, and those only, who are competent to select the officer being deemed competent also to hold the office." This rule is, as to county commissioners, qualified by section 4 of Article XVI to the extent that, while the entire electorate of the county has the right to vote on the election of a member, those only who are electors and residents of the particular district have a right to hold the office.

Here, contestee clearly met the provisions of section 3 of Article IX, and sections 33 and 574, Revised Codes, by retaining his voting residence in the Troy district; and under section 11 of the same Article and under the principles announced in the *Shea Case*, supra, he was competent to hold the office of commissioner from that district.

We might easily conceive of a situation where a person was elected county commissioner from a remote district in the county, and by reason of his service as county commissioner he was obliged to, and did, change his home to the county seat in order more efficiently to perform his services, and if this would be held to constitute a change in his legal residence, he would be disqualified from running for a second term. There is nothing in section 4, Article XVI, to suggest that it was the intention of its framers that this result should follow.

Among the cases supporting the view that the acceptance of employment with the state or federal government does not work a change in residence, when the person involved did not so intend, may be cited the following: *State ex rel. Lowe* v. *Banta*, 71 Mo. App. 32; *Walden* v. *Canfield*, 2 Rob., (La.) 466; *Carpenter* v. *Carpenter*, 30 Kan. 712, 2 Pac. 122, 46 Am. Rep. 108; and see Kennan on Residence and Domicile, pp. 142, 143. Under our Constitution and statutes (sec. 574, Rev. Codes), a "legal residence" may be at a different place from actual residence. (See 17 Am. Jur. 596, and compare generally *Texas* v. *Florida*,

306 U. S. 398, 59 Sup. Ct. 563, 83 L. Ed. 817, 121 A. L. R. 1179.)

Under the facts here, the court was justified in finding that the contestee resided within the Troy district during the two years preceding the time he became a candidate for county commissioner within the meaning of section 4, Article XVI of the Constitution. There is nothing to indicate that the word "resided" as used in this section was intended to have any different meaning than when used elsewhere in the Constitution when treating of the right to hold public office.

The facts in the case of *Snyder* v. *Boulware,* ante, p. 427, 96 Pac. (2d) 913, were entirely different from the facts here. There the candidate was seeking to establish a legal residence in a place where he had never established a home and where he had never lived.

It follows that the judgment should be and is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ARNOLD concur.