STATE, EX REL. RUDOLPH BRAZDA ET AL., RELATORS, V. FRANK MARSH, SECRETARY OF STATE, RESPONDENT.

5 N. W. (2d) 206

FILED JULY 20, 1942. No. 31509.

818

G. E. Price, for relators.

Walter R. Johnson, Attorney General, Robert A. Nelson and Charles S. Reed, for respondent.

Heard before EBERLY, J.

EBERLY, J.

This is a summary proceeding before a justice of the supreme court under section 32-1129, Comp. St. 1929. So far as applicable to the case here presented, this section reads:

"All certificates of nomination or nomination statements, which are in apparent conformity with the provisions of this article, shall be deemed to be valid, unless objections thereto shall be duly made in writing within ten days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby, addressed to them at their respective places of residence as given in the certificate of nomination or in the nomination affidavits of such persons, on file in that office: * * * The officer with whom the original certificate was filed, or who made an affidavit to the original nominating statement, shall, in the first instance, pass upon the validity of such objection, and his decision shall be final, unless an order shall be made in the matter by the county court, or

by a judge of the district court, or by a justice of the supreme court at chambers, on or before the second Wednesday preceding the election. Such order may be made summarily upon application of any party interested, or political party committee as herein provided, and upon such notice as the court or judge may require. The decision of the secretary of state, or the order of the judge or supreme court justice, shall be binding on all other county, municipal or other officers with whom certificates of nomination are filed."

It appears that on the 18th day of June, 1942, Harry R. Swanson filed his application in writing with the secretary of state of the state of Nebraska purporting to be duly verified, requesting that his name "be placed on the official ballot of the Democratic party for the primary election to be held on the 11th day of August, 1942, as a candidate for nomination to the office of secretary of state of the state of Nebraska." On the 27th day of June, 1942, objections were filed thereto by two qualified voters of the state of Nebraska, setting forth as grounds thereof:

"1. That the said Harry Swanson was not at the time of his filing and is not now a citizen of the state of Nebraska.

"2. That the said Harry Swanson formerly served as secretary of state and upon his retirement from that office an audit of his accounts showed him to be short in his accounts."

On the 7th day of July, 1942, it appears that a hearing was had before the secretary of state upon such objections, the answer thereto filed by Harry R. Swanson, and the evidence, "petitioners appearing by G. E. Price, their attorney, and Harry R. Swanson appearing by Charles S. Reed, his attorney," and a finding was entered and made "that there is insufficient evidence to establish the allegations of the petition," and it was ordered that the same be dismissed.

Thereafter on the 11th day of July, 1942, Rudolph Brazda and Andy Anderson, objectors heretofore referred to, presented their written petition to a justice of the supreme court of Nebraska, setting forth a history of the proceedings

had in this cause, alleging in substance that said Swanson, at the time of filing his application to have his name placed on the primary ballot as a candidate of the Democratic party, etc., was not a resident of the state of Nebraska and had not been a resident of the state of Nebraska for some time prior to June 17, 1942; that for some time prior to said date Swanson was and still is a resident of the state of Oregon; that the oath attached to his application was not sworn to in the presence of the notary public as required by law; that Harry R. Swanson formerly served as secretary of state of the state of Nebraska, and upon his retirement from that office an audit of his accounts showed him short in his accounts, the amount of which was not paid by such Swanson but was collected by the state of Nebraska from his bondsmen who were his sureties. Notice was thereupon issued and served upon the secretary of state of the filing of such petition, and he was required to make answer to the petition at a time certain.

The cause coming on to be heard as per notice given, a motion was presented by the secretary of state to strike paragraphs IX and X relative to the oath appended to the application made by Swanson, and also all allegations in reference to his shortage. A challenge to the jurisdiction of this court was also made in behalf of Swanson by the secretary of state. In addition, an answer was filed by the respondent Marsh as secretary of state.

As was stated by Sedgwick, C. J., in *State v. Hallowell*, 77 Neb. 610, 110 N. W. 717, in reference to the powers exercisable under the statute, "We think that the statute is valid, and confers power upon the county court and upon the judges of the district and supreme courts to summarily review the action of the officer with whom the original certificate of nomination is filed, and to make such order therein as the law requires."

The record discloses that the secretary of state upon the filing of objections by Brazda and another forthwith mailed to Swanson notice thereof by registered mail, addressed to him at his place of residence as given in his nomination af-

fidavit. This notice to Swanson was returned uncalled for, and not received by him. Nevertheless, he appeared at the hearing by the secretary of state, and was represented by an attorney thereat. It will be noted that the statute requires no notice of the institution of the proceedings to be given any party in interest by the objectors, save the objections which they file with the secretary of state. The statute involved contains no affirmative requirement that notice of the summary review shall be given to the candidate whose nomination papers are under attack. It merely provides that it shall be made upon such notice as the court or judge may require. The only notice required by the judge in the instant case was service of notice upon the secretary of state whose order was to be reviewed, and which was done. Under the circumstances disclosed by the record, service by mail upon Swanson as contemplated by the statute having failed, and the original notice having been returned undelivered and uncalled for, and in view of the summary character of the proceedings for review, in principle the rule announced in *Schuyler v. Hanna,* 28 Neb. 601, 44 N. W. 731, as applicable in appellate proceedings, would be controlling: "A notice of appeal is not necessary to confer jurisdiction." It follows that the motion of the secretary of state to dismiss the review proceedings was necessarily overruled.

It appears, however, that no transcript of the proceedings before the secretary of state is required to be filed under the terms of section 32-1129, Comp. St. 1929. We are not justified in implying what is not expressed in this statute. It is obvious that the party seeking the review necessarily carries the burden of setting forth the errors upon which he relies, and in so doing he must set forth the substance of what a transcript, if filed, would ordinarily contain. Any omission is suppliable by the opposing pleading. However, when presented to a judge or court, the proceeding, being in the nature of a summary review, is essentially appellate. It is subject to the necessary limitations of appellate procedure which would include the following: "It is the essential criterion of appellate jurisdiction that it revises and corrects

the proceedings in a cause already instituted, and does not create that cause." 2 Am. Jur. 849, sec. 9. While subject to a liberal construction, the objections to the validity of the candidate's certification or application presented to the secretary of state must be essentially the same as presented to the reviewing tribunal. It follows that the motion to strike directed against the allegations of objectors' petition charging the invalidity of the oath of the candidate because improperly taken by the notary in absence of Swanson, not having been presented to the secretary of state, must be sustained.

As to the disqualification of Swanson which the objectors contend arises by virtue of section 2, art. XV of the Constitution of the state of Nebraska, which reads as follows: "Any person who is in default as collector and custodian of public money or property shall not be eligible to any office of trust or profit under the Constitution or laws of this state; nor shall any person convicted of felony be eligible to office unless he shall have been restored to civil rights," we are committed to the following construction of the language above employed: "The term 'default,' as used in said section of the Constitution, implies more than a mere civil liability. There must exist a wilful omission to account and pay over, with a corrupt intention, or such a flagrant disregard of duty as to fairly justify the inference that his conduct was wilful and corrupt." *State v. Moores,* 52 Neb. 770, 73 N. W. 299.

The language of paragraph V of objectors' petition wholly fails to charge the alleged "default" within the terms of the constitutional provision as interpreted by this court. At most, as charged in the petition, the default might amount to a civil liability which would be insufficient to disqualify. As in the form presented the facts alleged were wholly immaterial, the motion to strike the same was necessarily sustained.

The matter was finally submitted as a question of fact upon the objectors' charge that at the time of filing his application Harry R. Swanson was not a resident of the state

of Nebraska, and had not been a resident of the state of Nebraska, and that such Swanson at the time of his filing was not, and is not now, a citizen of Nebraska.

Objectors' testimony establishes that when Harry R. Swanson's term as secretary of state expired in January, 1941, he removed to Council Bluffs, Iowa, where he resided for a time; that then he removed with his wife to the state of Oregon; that on the 12th day of September, 1941, he subscribed and swore to an "agent's qualification report" addressed to the "Insurance Commissioner of the state of Oregon" which was an application for issuance of an insurance agent's appointment, essential under the laws of Oregon; that his reply and statements therein are as follows: "4. Residence 2685 S. W. Chelmsford, Portland, Oregon. 5. Principal Place of Business 337 Pittock Blk., Portland, Oregon;" that there was issued to Mr. Swanson agent's license No. 3 5892, dated September 18, 1941, and also issued to him on same application his license No. 3 2023 for the fiscal year 1942 issued April 1, 1942. The sections of the Oregon law were also introduced in evidence which in effect limit appointments as insurance agents to residents of the state of Oregon. Objectors also introduced evidence that Harry R. Swanson was not the owner of the residence situated at 3189 Meredith avenue, Omaha, Nebraska; that one Kenneth C. Baker, with his wife, had lived in that property since 1936; that Harry R. Swanson is not living at that address; that Baker has not seen Swanson for "approximately two years ago—a year and a half ago," he does not know the exact time; that Mr. Swanson has had no household property at 3189 Meredith avenue since 1936; that Baker (on cross-examination) testified that he had purchased the property "directly from Harry R. Swanson through them (Conservative Investment Company)."

The witness Baker further testified: "Q. Did you have any agreement with Harry R. Swanson with reference to him retaining his residence there and returning to that place? A. Yes, I did; I had a verbal agreement with Harry at the time I took the place over. Q. What was the nature of

that agreement? A. Well, the nature was that he was in Lincoln and should he get out at any time, or any place else, that he come there and stay until such a time as he found a permanent location in Omaha, and that was at the time that I purchased the property from him. Q. Harry R. Swanson was at that time secretary of state of the state of Nebraska? A. He was. * * * Q. And when and where was the conversation? A. The conversation was in the office—the last conversation was in the office perhaps two or three years ago, the last time. Q. Was that after Harry R. Swanson was defeated for the office of secretary of state? A. I believe it was. Q. And what was the nature of that conversation? A. Well, the same thing as previously stated, that he could still come there and stay and maintain that as his home until he got a permanent location here in Omaha. That was the extent of the conversation. Q. Was that prior to him leaving for Oregon. A. Evidently it was. I didn't know when Harry left for Oregon."

Harry R. Swanson testified in part, as follows: That he was secretary of state from January, 1933, to January, 1941; that prior to his service as secretary of state he lived at 3189 Meredith avenue, Omaha, Nebraska; that he owned his home at the Omaha address; that when he became secretary of state he lived in Lincoln, but never changed his residence for voting purposes from Omaha; that he continued registered in Omaha from 3189 Meredith avenue; that he mortgaged the Omaha property and later it was sold to Kenneth Baker.

This witness testified further: "Q. Did you have any agreement with Kenneth Baker with reference to maintaining that place as your legal residence? A. Yes, sir. Q. And what was that agreement? A. Kenneth says, 'Any time you want to come out to the house and stay when you are here in Omaha, that is all right,' and I told him I wished to vote from that address, and he said that was all right. Q. You never voted in the city of Lincoln at any time? A. Never did." He further stated that he has been in Oregon "a little over a year, perhaps thirteen months;" that as his work

he has been representative of the Multnomah Medical Service Bureau; that he holds "a license to sell insurance in the state of Oregon;" that he made a written application for the same, and exhibit A in the deposition of W. F. Leary, deputy insurance commissioner of the state of Oregon, is a correct copy of the application he signed. Further, that the words "2685 S. W. Chelmsford, Portland, Oregon" written in such application as his residence, were written by himself, and he was then staying at that address because it was his son's address and he was staying there with him, and stayed there until November, 1941, and then moved to 2210 N. W. Everett, apartment 415, and stayed there with his son and daughter-in-law until the son left for the navy; that he owns no furniture there or in the state of Oregon; that he went to Oregon in response to his son's request that he come to assist him in determining whether the son should go into active military duty. Mr. Swanson testified that he registered for the draft on April 27, 1942, and produced and identified his official registration certificate, wherein he registers "3189 Meredith avenue, Omaha, Nebraska," as "place of residence."

He further testified that at the time he went to Oregon he had plans for coming back to Nebraska this year, 1942; that he went to Oregon on a vacation and visit with his son, and to take rest, with full intentions of returning to Nebraska; that he accepted the position with the medical association and at that time he did not change his plans regarding returning to Nebraska; that he intended to return to Nebraska in the summer of 1942 to file for secretary of state and to campaign, and had that intention at all times; that his son left Seattle in September, 1941, for Dutch Harbor, Alaska, and the son's wife is now living in Portland, Oregon, with her sister; that witness filled out an affidavit for civil service examination on an application form and stated therein that his residence was 3189 Meredith avenue, Omaha, Nebraska; that he had no intention whatsoever to change his residence from Omaha, Nebraska; that he never voted in Oregon or any other place outside of Nebraska; that he has

no furniture in the state of Nebraska or anywhere else, and has had none since 1936 or 1937; that after completing his service as secretary of state he went to Omaha, and then got an apartment in Council Bluffs and they were there about six weeks, and then they went to Portland, Oregon, to please his son, and intended to come back to Omaha late this July (1942) or first of August. Further this witness knew that the request was filed April 1, 1942, for continuance of his insurance license in Oregon, but stated that when he quit work the license would be revoked. This witness stated that he had not lived at 3189 Meredith avenue, Omaha, Nebraska, since January, 1933, when they left there to come to Lincoln, but he still claims that address as his mailing address; that when he came to Lincoln he had the post office department send his mail to Lincoln. This witness further testifies that, while he stated in his application to the insurance commissioner of Oregon that his address was 2685 S. W. Chelmsford, Portland, Oregon, he did not intend that to be his permanent residence; and that while he stated that his present address was 2210 N. W. Everett, he never intended to make that his legal residence, but intended to return to Omaha, Nebraska, and make his residence in Nebraska.

Joseph A. Vojir, the election commissioner of Douglas county, Nebraska, testifies that he is familiar with the registered voters of Douglas county; that he has investigated the records with reference to Harry R. Swanson at 3189 Meredith avenue, Omaha, and that such Swanson last voted on November 5, 1940, and has not voted at the last three elections held since that time; that Swanson's name is not found in the present city directory of Omaha.

These records referred to by witness Vojir are the records of his office which show that Mr. Swanson voted the last time on November 5, 1940, and the three elections held since that time were not general elections. This witness further testified: "Q. Mr. Vojir, according to your present records, then, is Harry R. Swanson a registered voter of Douglas county? A. He is. Q. And at what street address? A. At

the street there indicated in the register as 3189 Meredith avenue."

From the evidence epitomized on the foregoing pages is to be gleaned the facts which establish Harry R. Swanson's legal residence at the time of filing his application with the secretary of state.

"The question of what is residence is one of law to be determined by the consideration of the intention and overt acts of the person whose acts are being examined. A legal residence once acquired by birth or habitancy is not lost by a temporary absence for health, business, or pleasure, or while attending to the duties of a public office." 46 C. J. 938.

The fact of Swanson's legal residence prior to his first election as secretary of state being at 3189 Meredith avenue, Omaha, Nebraska, is not even the subject of attack in this record. The arrangement entered into orally by him with the party who succeeded him in actual possession to retain it while in Lincoln as his "voting residence," while attending to the public duties at Lincoln, was strictly within the rule above quoted. The recognition of the situation by the public authorities of Douglas county, and their continuing his registration at that place, was strictly within the authority conferred upon them by law. The exercise of the rights of suffrage as registrant from that address involved no fraud nor concealment, but was in all respects eminently proper.

We note that the judiciary of a neighboring state announces the applicable principle in the following terms:

"Under the Constitution and at common law, absence from one's voting residence resulting from acceptance of employment with state or federal government does not work a change of residence for purpose of holding office, when person involved does not so intend." *Wilson v. Hoisington*, 98 Pac. (2d) 369 (110 Mont. 20).

It is quite obvious that, in view of the evidence as to Swanson's method of life, the Omaha address was still his legal voting residence when his last term as secretary of state expired in 1941. It is true that thereafter he and his wife lived temporarily in Council Bluffs; then proceeded to the

state of Oregon and lived temporarily with their son and daughter-in-law in Portland of that state, and thereafter in a rented apartment wherein none of the furniture was owned by them. The evidence of the application for an insurance agent's license and the statements therein contained as to "residence" and "business residence," considered alone, tend to establish a change of legal residence of such applicant. But that must be considered in the light of the entire record relating to the subject of the intention of Swanson.

Under the facts in this case a temporary absence by Swanson for the purposes of business alone, unaccompanied by an actual intent to permanently change his residence, would not operate to change his voting residence, and especially the continuance of the latter was actually maintained and accorded due recognition by the established authorities where located. The evidence clearly preponderates to establish the fact that Swanson's legal residence continued in Nebraska unimpaired. Obviously, there can be no disqualification established by the record before us unless the facts so proved bring the case within some rule of exclusion established by an express provision of our Constitution or statutes passed pursuant thereto.

As to these, a peculiar situation forms the foundation of the present controversy. The office of "Secretary of State" of the state of Nebraska was originally created by section 1, art. III of the Constitution of 1866, which provided: "The executive department shall consist of a governor, secretary of state, auditor and treasurer, who shall be chosen by the electors of the state," etc. Section 4 of this article provided: "No person except a citizen of the United States, and a qualified elector of the state, shall be eligible to any office provided for by this Constitution." Our state Constitution of 1875, duly adopted in that year, contained the following as section 18, art. XVI thereof: "If this Constitution be adopted, the existing Constitution shall cease in all its provisions on the first day of November, A. D. 1875." The Constitution of 1875 was duly adopted and the provision last quoted thus became in full force and effect.

Section 1 of article V of the Constitution of 1875, as well as section 1, art. IV of the present Constitution as amended in 1920, each, in effect, provides that "The executive department of the state shall consist of a governor, lieutenant-governor, 'secretary of state,' " etc. Their election is also provided for therein. Section 2 of this article IV of our present Constitution also provides that "No person shall be eligible to the office of governor, or lieutenant-governor * * * who shall not have been for five years next preceding his election a resident and citizen of this state," etc. We find no similar provision applicable to the office of secretary of state. We note that section 8, art. III of this Constitution, prescribes that "No person shall be eligible to the office of senator, or member of the House of Representatives, who shall not be an elector and have resided within the district from which he is elected for the term of one year next before his election," etc. Section 7, art. V of the Constitution, prescribes as a necessary qualification of the chief justice and of associate justices of the supreme court that each "shall have resided in this state at least three years next preceding his election." But no similar constitutional provisions are applicable to the secretary of state. By the express terms of section 18, art. XVI of the Constitution of 1875, the constitutional requirement of the Constitution of 1866 that "No person except a citizen of the United States, and a qualified elector of the state, shall be eligible to any office provided for by this Constitution" became deprived of all legal force and effect "on the first day of November, A. D. 1875." As to the office of "secretary of state," this provision of the Constitution of 1866 has since that date never been constitutionally replaced.

In consideration of the history of this situation, and in view of the rule almost universally recognized by the courts that, when a state Constitution creates an office and names the qualifications of the incumbent, the legislature has no authority to prescribe additional qualifications or to remove any of the requirements provided for by the Constitution, the question in the instant case is, is it competent for the

legislature to require, in addition to the constitutional requirements, the qualifications of an elector, or residence within the state, as a prerequisite to candidacy for the office of secretary of state? We, in principle, are clearly committed to the negative.

We held in *Laverty v. Cochran*, 132 Neb. 118, 271 N. W. 354:

"A constitutional officer can only be removed by impeachment as provided in the Constitution. Const. art III, sec. 17.

"It is beyond the power of the legislature to provide for the removal or suspension of a constitutional officer, where the Constitution creates the office, fixes its terms, and the grounds and manner of removal."

See, also, *Conroy v. Hallowell*, 94 Neb. 794, 144 N. W. 895; *State v. Brown*, 131 Neb. 239, 267 N. W. 466.

But in the argument of the present case we have been cited to no affirmative statute that in terms or necessary effect prescribes as a prerequisite to lawful candidacy for the office of secretary of state that such candidate shall be a resident of the state or possess the qualifications of a lawful elector at or prior to the election at which such office is to be filled, and we are advised by counsel at the bar that no such statute is in existence.

It is also true that "In the absence of a constitutional or statutory provision residence within the district over which the jurisdiction of the office extends is unnecessary to eligibility." 46 C. J. 938. See, also, *State v. Payne*, 57 Nev. 286, 63 Pac. (2d) 921. Further, "All persons are equally eligible to office who are not excluded by some constitutional or legal disqualification." *People v. McCormick*, 261 Ill. 413, 103 N. E. 1053.

It is suggested, however, that the issues in this case are controlled by section 23, art. III of the Constitution, which reads as follows: "All offices created by this Constitution shall become vacant by the death of the incumbent, by removal from the state, resignation, conviction of a felony, impeachment, or becoming of unsound mind." Obviously, this provision has no possible application except to a present

incumbent of a public office. True, it mentions "removal from the state," but it is only the removal of an incumbent of an office that creates the situation which requires application of the provisions. It is the absence of a public officer and his inability by reason thereof to discharge the duties of his office in which the public has an interest that invokes the remedy which this constitutional provision supplies. Therefore, it provides no basis from which the eligibility of a candidate may be determined prior to his election.

The conclusion follows that, there being no constitutional or statutory provision requiring a stated period of residence in this state as a prerequisite to lawful candidacy for the office of secretary of state, none exists, and the questions here presented by the evidence hereinbefore set out must be resolved in favor of Harry R. Swanson.

Therefore, the petition of the objectors will be dismissed, and the application of Harry R. Swanson is hereby approved.